IN THE UNITED STTES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PUEBLO OF SAN FELIPE, a Federally
Recognized Indian Tribe,

      Plaintiffs,

vs.                                                                                   No. CIV 23-0296 JB/LF

DEBRA HAALAND, Secretary of the Interior;
ROBERT ANDERSON, Solicitor, Department
of the Interior; TRACY STONE-MANNING,
Director, Bureau of Land Management; JERRY
GIDNER, Director, Bureau of Trust Funds
Administration; DARRYL LACOUNTE,
Director, Bureau of Indian Affairs; PATRICIA
MATTINGLY, Acting Regional Director,
Bureau of Indian Affairs Southwest Region;
SANTEE LEWIS, Superintendent, Bureau of
Indian Affairs Southern Pueblos Agency, and
DEPARTMENT OF THE INTERIOR,

      Defendants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on the Defendant's Motion for Limited

Intervention as of Right In Order to File Motion to Dismiss, and Memorandum In support, filed

September 8, 2023 (Doc. 32)("Motion").  The Court held a hearing on November 20, 2023.  See

Clerk's Minutes at 1, filed November 20, 2023 (Doc. 47).  The primary issue is whether the Court

should permit Santa Ana Pueblo to intervene on a limited basis in this suit.  The Court concludes

that Santa Ana Pueblo may file a brief on the Federal Defendants' Motion to Dismiss and

---

[1] On September 10, 2024, the Court entered an Order granting in part and denying in part
the Defendant's Motion for Limited Intervention as of Right In Order to File Motion to Dismiss,
and Memorandum In Support, filed September 8, 2023 (Doc. 32).  See Order at 1-2, filed
September 10, 2024 (Doc. 81).  In the Order, the Court states that it will "issue a Memorandum
Opinion at a later date more fully detailing its rationale for this decision."  Order at 1 n.1.  This
Memorandum Opinion is the promised opinion.

Memorandum In Support, filed August 18, 2023 (Doc. 29)("MTD"), but does not permit Santa Ana Pueblo to file a separate motion to dismiss. Accordingly, the Court grants the Motion in part and denies it in part.

## FACTUAL BACKGROUND

The underlying facts of this case revolve around a disputed parcel of land between San Felipe Pueblo and Santa Ana Pueblo's lands in New Mexico, between Albuquerque and Santa Fe along the Interstate 25 ("I-25") corridor. Plat of the San Felipe Pueblo Grant (dated February 1, 1907), filed April 5, 2023 (Doc. 1-1)("Hall Plat"). See Map of Dispute Area (dated September 20, 2013), filed April 5, 2023 (Doc. 1-2)("BLM Resurvey"). San Felipe Pueblo is Santa Ana Pueblo's immediate northern neighbor; the disputed parcel lies at San Felipe Pueblo's southern boundary and Santa Ana Pueblo's northern boundary. The heart of the dispute is which Pueblo owns the land, and is thus entitled to compensation that the State highway authorities paid in the 1980s to compensate for the construction of I-25 through the land; that compensation sat in escrow pending determination of the land's ownership until 2018, when the Interior Department paid the money to Santa Ana Pueblo. See Complaint ¶ 136-137, at 39; id. ¶¶ 187-193, at 50-52.

This dispute stretches back hundreds of years. The relevant history begins in 1689, when the King of Spain provided a land grant to San Felipe for its land in the region. See Complaint ¶ 21, at 9. In 1763, Santa Ana Pueblo, displaced from the area farther North it traditionally had inhabited, purchased from a Spanish settler the El Ranchito Tract, which lies directly South of the San Felipe Pueblo's land. See Complaint ¶¶ 155-157, at 43-44. San Felipe Pueblo, however, claimed parts of this land and began selling parts of it off to Spanish settlers. See Pueblo of Santa Ana v. Baca, 844 F.2d 708, 709 (10th Cir. 1988)("Baca").[2]

---

[2]San Felipe Pueblo disputes certain factual conclusions that the United States District Court for the District of New Mexico reaches in Pueblo of Santa Ana v. Baca, No. CIV 81-0303 (D.N.M.

Interested parties have litigated the land's ownership several times, under multiple statutory and regulatory schemes, over the course of more than 200 years. Parties first litigated the matter in 1813, when Santa Ana Pueblo petitions the Spanish authorities for a declaration that the sales are invalid, because San Felipe Pueblo has no right in the land that San Felipe Pueblo sells; Spanish authorities inspected the land, a tribunal in Santa Fe heard three days of evidence, and Spain decided in Santa Ana Pueblo's favor. See Baca, 844 F.2d at 709. San Felipe appeals that decision through two layers of appellate review, both times losing, which culminated at the Real Audiencia of Guadalajara, a court of last resort for the territory in which the dispute occurred. See Baca, 844 F.2d at 710-12.

New Mexico came under the United States of America's control per the Treaty of Guadalupe Hidalgo of 1848, which obligates the United States to recognize all land titles under Spanish and Mexican law. See Complaint ¶¶ 22-23, at 9. In 1854, Congress passed a law creating the office of the Surveyor General of New Mexico, who ascertains land titles under Spanish and Mexican law, and recommends them for Congressional recognition. See Complaint ¶ 24, at 9. San Felipe Pueblo submits its 1689 Spanish grant to the Surveyor General, who determines it is valid, see Complaint ¶¶ 28-31, at 10-11; upon the Surveyor General's confirmation, Congress orders San Felipe's land be surveyed, and that a patent[3] for it be issued based on the survey, see

---

1985), upon which the Tenth Circuit in Pueblo of Santa Ana v. Baca, 844 F.2d 708 (10th Cir. 1988), relies. The Court draws on facts that San Felipe does not dispute in these cases for background.

[3]A land patent is a sovereign's dispensation of public lands' ownership to a person. See Patent, Black's Law Dictionary (11th ed. 2019)(defining "patent" as "[t]he governmental grant of a right, privilege, or authority. . . [or t]he official document so granting[,] . . . [a]lso termed public grant"); id. (defining "land patent" as "[a]n instrument by which the government conveys a grant of public land to a private person"); id. Letters Patent (defining "letters patent" as "[a] document granting some right or privilege, issued under governmental seal but open to public inspection . . . [or a] governmental grant of the exclusive right to use an invention or design. . . . [a]lso termed (in both senses) patent deed").

Complaint ¶ 32, at 11. Reuben E. Clements surveys San Felipe Pueblo's land in 1860, and, in 1864 President Abraham Lincoln issues San Felipe's patent that incorporates the Clements Survey. See Complaint ¶ 35, at 12.

In 1897, under the Private Land Claims Act, 26 Stat. 854 ("PLCA"), interested parties again litigate the issue, and the Court of Private Land Claims decide in San Felipe Pueblo's favor; the PCLA determines the boundary encroaches into the El Ranchito Tract. Complaint ¶¶ 36-37, at 12; id. ¶¶ 50-77, at 17-22. Santa Ana Pueblo files a petition against the United States in the PLCA Court, pursuant to the PLCA, to establish its holdings. See Complaint ¶¶ 53-59, at 17-19. The PLCA Court confirms Santa Ana Pueblo's petition and orders a survey be made of Santa Ana Pueblo's lands, which subsequently should be patented, conditioned on the premise that the patent not award to Santa Ana Pueblo any lands that the resurvey determines are part of San Felipe Pueblo's 1864 patent. See Complaint ¶¶ 58-62, at 18-19. Santa Ana Pueblo does not appeal that decision. See Complaint ¶ 62, at 19. Subsequent surveys and resurveys largely confirm the 1860 Clements Survey boundaries of the San Felipe Patent-El Ranchito Purchase boundaries, see Complaint ¶¶ 63-70, at 19-21; as noted above, the 1860 Clements Survey favors San Felipe Pueblo. Another survey, the 1916 Joy Survey, also favors San Felipe Pueblo. See Complaint ¶ 78-79, at 23.

In the 1920s and 1930s, two proceedings under the Pueblo Lands Act, 43 Stat. 636 ("PLA"), United States v. Brown and United States v. Algodones Land Co., again established the land's boundaries in San Felipe Pueblo's favor based on the 1916 Joy Survey. Complaint ¶¶ 108-109, at 31-32 (describing United States v. Brown). See Complaint ¶¶ 113-124, at 32-35 (discussing United States v. Algodones Land Co.). A supplemental report that the Pueblo Lands Board issues in 1931, however, notes that earlier federal surveys which favor San Felipe Pueblo over Santa Ana Pueblo are contested. See Complaint ¶ 120, at 34. The Pueblo Land Board's

supplemental report recommends a "friendly suit" between San Felipe Pueblo and Santa Ana Pueblo to resolve the issue, but neither Tribe waives its sovereign immunity to adjudicate the matter.  See Complaint ¶ 120, at 34.

Later, New Mexico highway authorities developed I-25, whose path crosses through the Conflict Area.  See Complaint ¶¶ 134, at 38.  Neither San Felipe Pueblo nor Santa Ana Pueblo object to the highway's construction through their lands, but they dispute -- this dispute being the one up to the present day -- entitlement to compensation for that portion of I-25 crossing the Conflict Area, i.e., based on which Pueblo's land it is.  See Complaint ¶¶ 136-145, at 39-41.  The United States' Bureau of Indian Affairs places in escrow the I-25 compensation, pending some final resolution of the ownership matter.  See Complaint ¶¶ 136-145, at 39-41.  Although not directly concerning the dispensation of the highway monies, other litigation has addressed the Conflict Area's ownership.  See Complaint ¶¶ 149-158, at 42-44 (discussing Baca, 844 F.2d 708; United States v. Thompson, 941 F.2d 1074 (10th Cir. 1991)).

Santa Ana in 1989 petitions the Department of the Interior to correct the survey of Santa Ana Pueblo's patent, based on alleged errors in the surveys that produce overlap between its El Ranchito Purchase tract and San Felipe Pueblo's patent, i.e., creating the Conflict Area.  See Complaint ¶ 159, at 45.  In the 1988 Tarr Opinion, the Interior Department determines that it lacks the authority to correct surveys based on Congressional patents.  See Complaint ¶ 163, at 46.  Upon an appeal by a different Pueblo of the 1988 Tarr Opinion's conclusion, the United States District Court for the District of Columbia determines that the Tarr Opinion's position is arbitrary and capricious, and so the Interior Department must reconsider whether it lacks a correction authority.  See Pueblo of Sandia v. Babbitt, No. CIV 94-2624, 1996 WL 808067 (D.D.C. Dec. 10 1996)(Greene, J.).  The Interior Department reconsiders the 1988 Tarr opinion, and, in 2000, issues the Leshy Opinion, determining that it possesses the authority to correct such surveys as that upon

which Santa Ana Pueblo's patent is based.  See Complaint ¶¶ 161-165, at 45-46.  The Interior Department urges San Felipe Pueblo and Santa Ana Pueblo to negotiate a settlement of the matter.  See Memorandum from Hilary C. Tompkins, Solicitor, to Kevin K. Washburn, Assistant Secretary for Indian Affairs at 2, 3 n.9 (dated July 7, 2013), filed August 18, 2023 (Doc. 29-1)("Tompkins Opinion").  Although San Felipe Pueblo and Santa Ana Pueblo come close to resolution -- whereby San Felipe Pueblo relinquishes its claim to the Conflict Area, and, in exchange, Santa Ana Pueblo supports San Felipe Pueblo's pursuit of purchasing replacement land with the federal government's assistance -- negotiations ultimately fail, and the parties reach no settlement.  See Tompkins Opinion at 3 n.9.

In 2013, the Interior Department issues the Tompkins Opinion, which determines that, given the failure of negotiations between San Felipe Pueblo and Santa Ana Pueblo, the Interior Department needs to exercise the authority, which the 2000 Leshy Opinion determines that the Secretary possesses, to correct Santa Ana Pueblo's patent's survey.  See Complaint ¶ 173, at 48.  After the 2013 Tompkins Opinion, the Interior Department conducts a corrected resurvey of the disputed area ("Corrective Resurvey"), decides in Santa Ana Pueblo's favor the disputed area, and publishes notice of its intent to file the Corrective Resurvey.  Complaint ¶¶ 174-178, at 48-49.  San Felipe Pueblo appeals to the Interior Board of Land Appeals ("IBLA") the notice, but, in 2017, IBLA decides against San Felipe Pueblo as to the Corrective Resurvey's validity.  Complaint ¶¶ 179-185, at 49-50.  In 2018, the Interior Department formally files the plats based on the Corrective Resurvey.  See Complaint ¶ 186, at 50.

Based on the Corrective Resurvey's determination that the Conflict Area belongs to Santa Ana Pueblo, the Interior Department disburses to Santa Ana upon Santa Ana Pueblo's formal request the I-25 compensation funds in escrow for more than thirty years.  See Complaint ¶¶ 187-191, at 50-51.  After disbursing the funds to Santa Ana Pueblo, the Interior Department informs

San Felipe Pueblo of the disbursement of the escrow funds.  See Complaint ¶¶ 187-191, at 50-51. San Felipe Pueblo objects in a letter to the Interior Department's action of disbursing to Santa Ana Pueblo the escrow funds without first informing San Felipe Pueblo.  See Complaint ¶ 192, at 52. San Felipe Pueblo contends that the Interior Department's actions violate the Interior Department's trust responsibilities to San Felipe Pueblo.  See Complaint ¶ 192, at 52.  The Interior Department responds that the 2013 Tompkins Opinion and the 2017 IBLA decision upholding the Corrective Resurvey dictate its actions, and the Interior Department acknowledges that San Felipe Pueblo may pursue any available avenues for legal relief.  See Complaint ¶ 193, at 52.

## PROCEDURAL BACKGROUND

On April 5, 2023, San Felipe files its Complaint.  In the Complaint, San Felipe Pueblo alleges the following causes of action: (i) claims under the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), Complaint ¶¶ 197-217, at 53-57; (ii) claims under the Declaratory Relief Act, 28 U.S.C. § 2201, see Complaint ¶¶ 218-227, at 57-60; and (iii) a Breach of Trust Responsibility, see Complaint ¶¶ 228-239, at 60-64.  San Felipe Pueblo's APA claims are based on the actions the Interior Department takes in resurveying the San Felipe Pueblo-Santa Ana Pueblo boundary lines and in paying out the escrow funds based on its determination that Santa Ana Pueblo owns those funds:

> 206.    Opinion M-37027, the April 5, 2017 IBLA decision, the April 20, 2017 filing of the resurvey, the 2017 change to the record ownership of the Conflict Area in BIA TAAMS, and the January 11, 2018 disbursement of the tribal trust funds (the Resurvey Actions) were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A).
>
> 207.    The Resurvey Actions were also contrary to constitutional right, power, privilege or immunity, in violation of the APA.  5 U.S.C. § 706(2)(B).
>
> 208.    The Resurvey Actions were also in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the APA.  5 U.S.C. § 706(2)(C).

209.    San Felipe therefore requests that the Resurvey Actions be declared unlawful and set aside.

210.    San Felipe further requests the Defendants be ordered to restore the boundaries and title of the San Felipe Patent, and related matters, to the status that existed before the Resurvey Actions, including restoring the record ownership in the BIA TAAMS to San Felipe, replenishing the tribal trust account, refiling previous surveys and plats or resurveying, as appropriate, and restoring the survey boundary monuments that were removed.

. . . .

215.    Rather than paying such compensation to San Felipe, the Defendants caused such compensation to be disbursed to Santa Ana on January 11, 2018.

216.    The Department and its officials have unlawfully withheld or unreasonably delayed the payment to San Felipe of such compensation, in violation of the APA. 5 U.S.C. § 706(1).

217.    San Felipe therefore requests that the Court compel the Defendants to take such actions as are necessary to promptly make full payment to San Felipe of the right-of-way and easement compensation mandated by law, with interest.

Complaint ¶¶ 206-210, at 55-56; id. ¶¶ 215-217, at 57.  San Felipe Pueblo's Declaratory Relief

claims and its Breach of Trust Responsibility claims also revolve around the actions that the

Interior Department took around its Corrective Resurvey:

224.    San Felipe therefore requests under 28 U.S.C. § 2201 a judicial declaration that San Felipe's title and right to sole possession of the lands within the boundaries of the San Felipe Patent has been previously and conclusively determined; that no claims adverse to San Felipe's title and right may be validly asserted, including Santa Ana's claim to the Conflict Area; and that the Department of the Interior and its officials have no authority to interfere with, and are obligated to recognize, San Felipe's title and right to sole possession and quiet enjoyment of the lands within the boundaries of the San Felipe Patent, including the Conflict Area.

. . . .

227.    San Felipe requests a judicial declaration that its title and right to sole possession of the lands within the boundaries of the San Felipe Patent, including the Conflict Area, satisfies the sole condition for disbursement of the entire tribal trust account to San Felipe.

- 8 -

. . . .

237.    The actions of the Defendants in dissipating and disbursing the tribal trust account breached Defendants' trust responsibilities to San Felipe.

. . . .

239.    The actions of the Defendants as the trustee responsible for safeguarding the property of San Felipe as recorded within the BIA TAAMS, to alter the record ownership of the San Felipe Patent sometime between April 20, 2017 and November 14, 2017, without any notice to San Felipe and without any legal right to do so are egregious, and San Felipe requests that the Court order the Defendants to restore the record ownership status of the San Felipe Patent to San Felipe in the BIA TAAMS.

San Felipe's Prayer for Relief reads:

a.    A judgment declaring that the final decision in United States v. Algodones Land Co. conclusively and finally quieted San Felipe's unextinguished title to the lands within the boundaries of the San Felipe Patent.

b.    A judgment declaring that all claims adverse to San Felipe's title are now barred by the expiration of the limitations periods provided in the Pueblo Lands Act.

c.    A judgment declaring the Defendants' legal obligation to recognize and to not interfere with San Felipe's title and its right to sole possession and quiet enjoyment of the lands within the boundaries of the San Felipe Patent and enjoining the Defendants from interfering with such title, right, and quiet enjoyment.

d.    A judgment declaring unlawful and setting aside Solicitor's Opinion M-37027, the April 5, 2017 IBLA decision, the April 20, 2017 filing of the 2013 resurvey, the alteration of title to the San Felipe Patent in the BIA TAAMS between April 20, 2017 and November 17, 2017, and the January 11, 2018 disbursement of the tribal trust account funds.

e.    A judgment ordering the Defendants to restore to their previous status San Felipe's title and right to lands within the San Felipe Patent boundaries, and to make all necessary and appropriate restoration to the BIA TAAMS, surveys and plats on file, and the monuments marking the boundaries of the San Felipe Patent.

f.    A judgment declaring that San Felipe's title and right to sole possession of the lands within the boundaries of the San Felipe Patent, including the Conflict Area, satisfies the sole condition for disbursement of the entire tribal trust account to San Felipe.

g.    A judgment compelling the Secretary of the Interior to provide a full accounting of the tribal trust account, to replenish the tribal trust account to the appropriate balance, with interest, as of the date of the Court's order, and to then release and pay the entire tribal trust account balance to San Felipe.

h.    In the alternative to restoration of and disbursement of the tribal trust account to San Felipe, a judgment in equity compelling the Defendants to pay equitable restitution to San Felipe in the amount that should be in the tribal trust account as of the date of the Court's order.

i.    An award of San Felipe's attorney fees, costs, and such other relief as may be just and equitable.

Complaint, Prayer for Relief ¶¶ (a)-(i), at 64-65.

On August 18, 2023, the Federal Defendants file their MTD.  They argue that the Court lacks jurisdiction over San Felipe Pueblo's lawsuit.  See MTD at 12-30.  In the Defendants' view, the Complaint seeks, in effect, to have the Court adjudicate a dispute over lands in which the United States asserts an interest -- specifically, a dispute over Indian lands -- which means the suit can be brought only under the QTA's framework for waiving federal sovereign immunity.  See MTD at 12-20.  Because, however, the QTA does not waive sovereign immunity as to disputes over Indian lands, there is no applicable sovereign immunity waiver, and, in turn, the Court lacks jurisdiction to hear the Complaint.  See MTD at 20-26.  The Defendants argue that all of the Complaint's theories of liability -- the APA claims, Declaratory Relief claims, and trust breach claims -- fail, because they turn on the underlying land dispute, over which the Court lacks jurisdiction. See MTD at 12-26.  The Defendants offer additional arguments against the Complaint based on standing and on the unavailability of free-floating trust responsibilities untethered to specific statutory provisions.  See MTD at 26-34.

San Felipe Pueblo responds that the QTA does not bar its claims and that its Complaint is otherwise viable.  See Plaintiff's Memorandum In Opposition to Defendants' Motion to Dismiss, filed October 13, 2023 (Doc. 40).  The Defendants reply, arguing that San Felipe Pueblo's

Response demonstrates its Complaint predicates a land dispute over which the Court lacks jurisdiction.  See Federal Defendants' Reply In Support Of Their Motion To Dismiss, filed November 9, 2023 (Doc. 43).

On September 8, 2023, Santa Ana Pueblo files its Motion for Limited Intervention as of Right in Order to File Motion to Dismiss and Memorandum in Support.  See Motion at 1.  In its Motion, Santa Ana Pueblo contends that it may intervene as of right, because it has Article III standing and meets the requirements of rule 24(a)(2) of the Federal Rules of Civil Procedure.  See Motion at 6.  According to Santa Ana Pueblo, Article III standing requires: (i) injury-in-fact, (ii) causation, and (iii) redressability.  See Motion at 8-11.; See Lujan Defs. Of Wildlife, 504 U.S. 555, 560-61 (1992).  Santa Ana Pueblo identifies its injury as the potential loss of approximately 564 acres of its land; it asserts that the cause of this potential injury is traceable directly to San Felipe Pueblo's request relief, and it asserts that the Court can prevent this injury if the federal actions under attack in the Complaint are upheld.  See Motion at 7.  According to Santa Ana Pueblo, to satisfy rule 24(a)(2) criteria, the party attempting intervention must prove: (i) that the motion is timely; (ii) the proposed intervenor has a substantial interest; (iii) the action threatens to impair that interest; and (iv) the proposed intervenors interest is not adequately represented.  Fed. R. Civ. P. 24(a)(2).  Santa Ana Pueblo asserts that: (i) the motion is timely, because it seeks leave to intervene before any significant activity occurs in the case; (ii) it has a substantial interest, because the dispute is over 564 acres of its land; (iii) the action threatens to impair that interest, because it involves the important issue of ownership; and (iv) the United States does not represent its interest, because the United States has taken adverse positions such as recognizing that San Felipe Pueblo retains title to portions of Private Claims Four, Five, and Six.  See Motion at 8-11.  Santa Ana Pueblo therefore concludes that they may intervene as of right.  See Motion at 8-11.

On September 22, 2023, San Felipe Pueblo files its Opposition to Santa Ana Pueblo's Motion for Limited Intervention as of Right in Order to File Motion to Dismiss, filed September 22, 2023 (Doc. 34)("Response"). In the Response, San Felipe Pueblo requests that the Court deny Santa Ana Pueblo's Motion. See Response at 2. It asserts three reasons why intervention is inappropriate under rule 24(a)(2). See Response at 2. First, San Felipe Pueblo argues that Santa Ana Pueblo does not have Article III standing, because Santa Ana Pueblo does not have a legally cognizable interest in the subject of the underlying action. See Response at 3. San Felipe Pueblo reasons that the Pueblo Lands Act extinguished Santa Ana's legally cognizable interest when Santa Ana did not bring any action before the statute of limitations expired on May 31, 1934. See Response at 4. Second, San Felipe Pueblo argues that Santa Ana Pueblo is not entitled to intervention, because resolution of the underlying action without Santa Ana Pueblo does not threaten its ability to protect its legally cognizable interest. See Response at 6. Specifically, San Felipe Pueblo argues that the authority to alter the boundary between Pueblos is solely Congress'; thus, even if San Felipe Pueblo prevails, Santa Ana Pueblo may petition Congress to seek correction of the Pueblo boundaries. See Response at 6. Third, San Felipe Pueblo argues that Santa Ana Pueblo may not intervene, because the Federal Defendants adequately represent Santa Ana Pueblo's interest. See Response at 7. San Felipe Pueblo reasons that, because the Federal Defendants and Santa Ana Pueblo share an identical objective of defending and upholding the Federal Defendants' actions, Santa Ana Pueblo has adequate representation. See Response at 7. San Felipe therefore concludes that Santa Ana cannot intervene.

On October 6, 2023, Santa Ana Pueblo files its Reply in Support of its Motion for Limited Intervention in Order to File Motion to Dismiss, filed October 6, 2023 (Doc. 38)("Reply"). First, Santa Ana Pueblo argues that San Felipe Pueblo's argument that Santa Ana Pueblo has no legally cognizable interest in the case is inappropriate, because when determining intervention, courts do

not reach the claimed interest's merits.  See Reply at 3.  Second, Santa Ana Pueblo argues that it has an interest in the disputed area of land and that, even if it is true that Santa Anta Pueblo could petition Congress, that is not a bar to Santa Ana Pueblo participating in the current litigation.  See Reply at 6.  Third, Santa Ana Pueblo contends that the Federal Defendants do not adequately represent its interest, because the Federal Defendants recognize that San Felipe Pueblo has good title to portions of Private Claims Four, Five, and Six -- a position with which Santa Ana disagrees. As a result, Santa Ana Pueblo concludes that it may intervene.

## **LAW REGARDING INTERVENTION**

Rule 24 provides for intervention of right or permissive intervention on timely motion:

**(a)**    **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

**(1)**    is given an unconditional right to intervene by a federal statute; or

**(2)**    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b)**    **Permissive Intervention.**

**(1)**    *In General*.  On timely motion, the court may permit anyone to intervene who:

**(A)**    is given a conditional right to intervene by a federal statute; or

**(B)**    has a claim or defense that shares with the main action a common question of law or fact.

**(2)**    *By a Government Officer or Agency*. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

**(A)**    a statute or executive order administered by the officer or agency; or

     **(B)**    any regulation, order, requirement, or agreement issued or made under the statute or executive order.

   **(3)**    ***Delay or Prejudice***. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(a)-(b). "The movant bears the burden of establishing his or her right to intervene." Ortiz v. New Mexico, 550 F. Supp. 3d 1020, 1070 (D.N.M. 2021)(Browning, J.).

**1.**    <u>**Timeliness.**</u>

Before discussing the differences between the two procedural paths to intervention, the Court addresses one common requirement: timeliness. Both intervention as a matter of right and permissive intervention require that the motion to intervene be "timely." Fed. R. Civ. P. 24. "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" Utah Ass'n of Cntys. v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2007)(quoting Sanguine, Ltd. v. U.S. Dep't of Interior, 736 F.2d 1416, 1418 (10th Cir. 1984)).

> While rule 24 does not specify what makes a motion to intervene timely, the Tenth Circuit has held that "[t]he timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.

Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. 236, 245 (D.N.M. 2008)(Browning, J.)(quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1250)(brackets in Am. Ass'n of People with Disabilities v. Herrera, but not in Utah Ass'n of Cntys. v. Clinton). The Tenth Circuit states that the timeliness "analysis is contextual" and that courts should not use "absolute measures of timeliness." Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1250 (quoting Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir. 1994)). A court properly denies intervention where, for example, a case is near its end stage, and allowing a party to intervene causes undue prejudice and delay in the

proceeding; on the other hand, intervention is proper where, despite time's passage, there is limited activity in the case, and the intervention will not prejudice the existing parties.  See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 245-46.

**2.    Intervention of Right.**

In the absence of an unconditional, federal statutory right to intervene, a movant must satisfy the following three criteria to qualify for intervention of right: (i) the movant must have an interest in the litigation's subject matter; (ii) the movant's interest will be impaired or impeded if movant is not allowed to intervene; and (iii) the litigation's existing parties do not represent adequately the movant's interest.  See Fed. R. Civ. P. 24(a)(2).  The Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene." W. Energy All. v. Zinke, 877 F.3d 1157, 1164 (10th Cir. 2017)(citing Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 841 (10th Cir. 1996)).

The first element --"[t]he interest element" -- "is 'a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" WildEarth Guardians v. Nat'l Park Serv., 604 F.3d 1192, 1198 (10th Cir. 2010)(quoting San Juan County, 503 F.3d at 1195)(emphasis in WildEarth Guardians v. Nat'l Park Serv, but not in San Juan County).  An interest that is direct, substantial, and legally protectable likely justifies intervention.  See San Juan County, 503 F.3d at 1194 ("This is not to say that it is error for a court addressing an application for intervention to consider whether the prospective intervenor's interest is direct, substantial, and legally protectable.  As we previously stated, an interest that clearly satisfies all these conditions would likely justify intervention.")(citing 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1908, at 272), abrogated on other grounds by Hollingsworth v. Perry, 570 U.S. 693, 697-711 (2013).  "The movant's claimed interest is measured in terms of its relationship to the property or transaction that is the subject of the action,

not in terms of the particular issue before the district court." WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1198 (citing Utah Ass'n of Cntys. v. Clinton, 255 F.3d 1246, 1252 (10th Cir. 2001)).

The second element -- impairment or impediment to the intervenor's interest -- presents "a minimal burden." WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1199. "'To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.'" WildEarth Guardians v. U.S. Forest Serv., 573 F.3d 992, 995 (10th Cir. 2009)(quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1253)(brackets in Utah Ass'n of Cntys. v. Clinton). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." WildEarth Guardians v. U.S. Forest Serv., 573 F.3at 995 (quoting San Juan County, 503 F.3d at 1195). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." San Juan County, 503 F.3d at 1203 (quoting United States v. Union Elec. Co., 64 F.3d 1152, 1162 (8th Cir. 1995)). If a proposed intervenor's "interest will be prejudiced if it does not participate in the main action, the mere availability of alternative forums is not sufficient to justify denial of a motion to intervene." Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1254 (quoting Commodity Futures Trading Comm'n v. Heritage Cap. Advisory Servs., Ltd., 736 F.2d 384, 387 (7th Cir. 1984)). For rule 24(a)(2)'s purposes, "sufficient impairment may result even from the 'stare decisis effect' of a district court's judgment," WildEarth Guardians v. National Park Service, 604 F.3d at 1199 (quoting Utahns for Better Transportation v. United States Department of Transportation, 295 F.3d 1111, 1116 (10th Cir. 2002)), and a court may consider "any significant legal effect in the applicant's interest and [is] not restricted to a rigid res judicata

test," Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior, 100 F.3d at 844.

As for the third element, the would-be intervenor also has the "minimal" burden of showing that the existing parties does not represent adequately its interest. WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1200. "The movant must show only the possibility that representation may be inadequate." WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1200 (citing Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1117). "The possibility that the interests of the applicant and the parties may diverge need not be great in order to satisfy this minimal burden." WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1200 (quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1254).

## 3.    Permissive Intervention.

"To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation." San Juan County, 503 F.3d at 1207.  The court must consider whether intervention will cause undue delay or prejudice when considering whether to grant permissive intervention.  See Fed. R. Civ. P. 24(b)(3); DeJulius v. New England Health Care Emps. Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005)(noting that district courts must consider undue prejudice or delay in deciding whether to grant permissive intervention).  The Court interprets rule 24(b) to allow permissive intervention when: "(i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights." Wheeler Peak v. L.C.I.2, Inc., No. CIV 07-1117, 2009 WL 521799, at *3 (D.N.M. Oct. 27, 2009)(Browning, J.)(citing Forest Guardians v. U.S. Dep't of Interior, No. CIV 02-1003, 2004 WL 3426413, at *10 (D.N.M. Jan. 12, 2004)(Browning, J.)).  "The grant of permissive intervention lies within the discretion of the district court." Kane Cnty. v. United States, 597 F.3d 1129, 1135

(10th Cir. 2010)(citing <u>City of Stilwell v. Ozarks Rural Elec. Coop.</u>, 79 F.3d at 1043).  Class

members may intervene permissively even after the named plaintiffs settle their claims. <u>See</u> <u>Payne</u>

<u>v. Tri-State Careflight, LLC</u>, No. CV 14-1044 JB/KBM, 2016 WL 9738302, at *25-26 (D.N.M.

July 12, 2016)(Browning, J.).

## <u>LAW REGARDING ARTICLE III STANDING</u>

"Article III of the Constitution limits the jurisdiction of federal courts to Cases and

Controversies." <u>San Juan Cnty. v. United States</u>, 503 F.3d at 1171.  <u>See</u> U.S. Const. art. III, § 2.

"In general, this inquiry seeks to determine 'whether [the plaintiff has] such a personal stake in the

outcome of the controversy as to assure that concrete adverseness which sharpens the presentation

of issues upon which the court so largely depends for illumination.'" <u>Wyoming ex rel. Crank v.</u>

<u>United States</u>, 539 F.3d 1236, 1241 (10th Cir. 2008)(Ebel, J.)(quoting <u>Massachusetts v. EPA</u>, 549

U.S. 497, 539 (2007)).  "[A] suit does not present a Case or Controversy unless the plaintiff

satisfies the requirements of Article III standing." <u>San Juan Cnty. v. United States,</u> 503 F.3d at

1171.  To establish standing, a plaintiff must show three things: "(1) an injury in fact that is both

concrete and particularized as well as actual or imminent; (2) a causal relationship between the

injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a

favorable decision." <u>Protocols, LLC v. Leavitt</u>, 549 F.3d 1294, 1298 (10th Cir. 2008)(Hartz,

J.)(internal quotation marks omitted).  Finally, "[s]tanding is determined as of the time the action

is brought." <u>Smith v. U.S. Court of Appeals, for the Tenth Circuit</u>, 484 F.3d 1281, 1285 (10th Cir.

2007)(Seymour, J.)(quoting <u>Nova Health Sys. v. Gandy</u>, 416 F.3d 1149, 1154 (10th Cir.

2005)(Ebel, J.)).

## <u>LAW REGARDING STANDING AND INTERVENTION</u>

Because "standing implicates a court's jurisdiction, [and] requires a court itself to raise and

address standing before reaching the merits of the case before it," the court must resolve the Article

III standing requirements.  San Juan Cnty. v. United States, 503 F.3d at 1172 (quoting San Juan Cnty. v. United States, 420 F.3d 1197, 1205 n.3 (10th Cir. 2005)).  The Tenth Circuit held that "parties seeking to intervene under rule 24(a) or (b) need not establish Article III standing 'so long as another party with constitutional standing on the same side as the intervenor remains in the case.'" San Juan Cty. v. United States, 503 F.3d at 1172 (quoting San Juan Cty. v. United States, 420 F.3d at 1206).

Since the Tenth Circuit decided San Juan County v. United States, "the Supreme Court modified our 'piggyback standing' rule, holding that an intervenor as of right must 'meet the requirements of Article III if the intervenor wishes to pursue relief not requested' by an existing party." Kane Cnty. v. United States, 928 F.3d 877, 886-87 (10th Cir. 2019).  In Town of Chester, New York v. Laroe Estates, Inc., 581 U.S. 433 (2017), the record was ambiguous whether the intervening plaintiff was seeking a different form of relief from the existing plaintiff: a separate award of money damages against the same defendant in its own name.  581 U.S. at 440-42. Because "[a]t least one [litigant] must have standing to seek each form of relief requested," the Supreme Court remands the case for the United States Court of Appeals for the Second Circuit to determine whether the intervenor, in fact, seeks "additional relief beyond" what the plaintiff requests.  Kane Cnty. v. United States, 928 F.3d at 886-87 (quoting Town of Chester, New York v. Laroe Estates, Inc., 581 U.S. at 440-42).  With regard to a settlement agreement, the Court has holds that, "if the original parties to the case settle all the claims between them and the intervenor wishes to challenge the settlement, however, the intervenor is then required to establish independent standing under Article III of the United States Constitution." WildEarth Guardians v. United States Forest Serv., 778 F. Supp. 2d 1143, 1151 (D.N.M. 2011)(Browning, J.)(citing City of Colo. Springs v. Climax Molybdenum Co., 587 F.3d 1071, 1081 (10th Cir. 2009)("Intervenors must show independent standing to continue a suit if the original parties on

whose behalf intervention was sought settle or otherwise do not remain adverse parties in the litigation.")(quoting Dillard v. Chilton County Comm'n, 495 F.3d 1324, 1330, 1336 (11th Cir. 2007).

## ANALYSIS

The Court undertakes its analysis in three sections.  First, it concludes that Santa Ana Pueblo may intervene as of right, because it satisfies the rule 24(a)(2) requirements.  Second, it concludes that Santa Ana Pueblo may intervene permissively, because it satisfies the rule 24(b) requirements.  Third, the Court concludes that Santa Ana Pueblo meets the Article III standing requirements.  The Court limits, however, Santa Ana Pueblo's intervention to filing a brief on the Federal Defendants' MTD rather than allowing Santa Ana Pueblo to file a separate motion to dismiss.

## I.    SANTA ANA PUEBLO MAY INTERVENE AS OF RIGHT.

In addition to filing a timely motion to intervene, a movant who lacks an unconditional statutory right to intervene must satisfy the following three criteria to qualify for intervention of right: (i) the movant must have an interest in the litigation's subject matter; (ii) the movant's interest will be impaired or impeded if the movant is not allowed to intervene; and (iii) the litigation's existing parties do not represent adequately the movant's interest.  See Fed. R. Civ. P. 24(a)(2).  The Court concludes that Santa Ana Pueblo may intervene as of right, because the Motion is timely, and Santa Ana Pueblo satisfies the three rule 24(a)(2) elements.

### A.  THE MOTION TO INTERVENE IS TIMELY, AND SANTA ANA PUEBLO HAS A PROTECTIBLE INTEREST IN THIS LITIGATION.

Although San Felipe Pueblo does not concede any rule 24(a) elements, it does not dispute whether Santa Ana's Motion is timely or whether Santa Ana has a protectible interest in this litigation's subject matter.  See generally Response at 1-16.  The Motion is timely, because Santa

Ana seeks leave to intervene before any significant activity occurs in the case.  See Motion at 8. Although San Felipe Pueblo believes that Santa Ana Pueblo files its motion to intervene strategically to coincide with San Felipe's briefing obligation in relation to the Federal Defendants' motion to dismiss, San Felipe Pueblo concedes that there is no extreme prejudice to San Felipe Pueblo arising from the timing of Santa Ana Pueblo's application for limited intervention.  See Response at 3.  Accordingly, the Motion is timely.  Santa Ana Pueblo asserts an interest in the underlying litigation, because it stands to lose approximately 564 acres of its land.  See Motion at 7.  San Felipe Pueblo concedes this point in saying: "Denying that Santa Ana has an interest would be disingenuous as no single entity could benefit more from the Federal Defendants' improper and void actions than Santa Ana Pueblo."  Response at 3.  Santa Ana Pueblo therefore has an interest in the litigation.

Although San Felipe Pueblo concedes that Santa Ana has an interest in the underlying litigation, it argues that Santa Ana Pueblo has no interest in San Felipe's Second, Fourth, and Fifth Claims, because those claims concern only the United States' payment of monies from a trust account to Santa Ana Pueblo and seek recovery from the United States, and not from Santa Ana Pueblo.  See Response at 3-4.  Santa Ana Pueblo counters that this argument fails because San Felipe can prevail on its Second, Fourth, and Fifth Claims only if it first prevails on its First and Third Claims -- that is, only if the Court determines that San Felipe holds superior title to the disputed land.  See Reply at 2 n.1.  The Court agrees with Stana Ana Pueblo's logic.

"The movant's claimed interest is measured in terms of its relationship to the property or transaction that is the subject of the action, not in terms of the particular issue before the district court."  WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1198 (citing Utah Ass'n of Cntys. v. Clinton, 255 F.3d 1246, 1252 (10th Cir. 2001)).  Here, Santa Ana Pueblo's asserted interest relates

to the property that is this action's subject.  Because Santa Ana Pueblo currently claims possession of the disputed land, it has a direct and substantial interest in the litigation.

### B. THIS LITIGATION MAY AFFECT ADVERSELY SANTA ANA PUEBLO'S INTEREST.

Regarding impairment of interest, the Court concludes that this litigation adversely may affect Santa Ana Pueblo's interests.  "Establishing the potential impairment of such an interest presents a minimal burden, and such an impairment may be contingent upon the outcome of [ ] litigation."  Kane Cnty. v. United States, 928 F.3d 877, 891 (10th Cir. 2019).  Here, San Felipe Pueblo seeks to overturn the Federal Defendants' administrative actions that clear the cloud from Santa Ana Pueblo's title and to have the Court determine title to the disputed land in its favor.  See Reply at 5.  If the Court enters judgment for San Felipe Pueblo, Santa Ana Pueblo's current title to the disputed tract again will be in question.  See Reply at 5.  This showing satisfies the minimal burden for establishing potential impairment.

San Felipe Pueblo nevertheless contends that this litigation will not affect adversely Santa Ana Pueblo's interests, because only Congress has the authority to alter Pueblo boundaries.  See Response at 6.  Relying on Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531 (8th Cir. 1970), San Felipe Pueblo argues that there is no impairment when a party would not be bound by the judgment and could pursue its claims in a separate action.  See Response at 6 (citing Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531 (8th Cir. 1970).  It thus maintains that Santa Ana Pueblo's interests remain intact, because, even if San Felipe Pueblo prevails, Santa Ana Pueblo may petition Congress to correct the Pueblo boundaries through proper channels.  See Response at 6.  The Court is unpersuaded.

Even if Santa Ana Pueblo can seek relief in future proceedings, the availability of alternative forums does not bar intervention.  The Tenth Circuit holds that "the mere availability

of alternative forums is not sufficient to justify denial of a motion to intervene because 'at most,' participating in a new proceeding 'would not provide the level of protection to the intervenors' interests that the current plan offers." WildEarth Guardian v. Nat'l Park Serv., 604 F.3d 1192, 1199 (10th Cir. 2010)(citing Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1254 (10th Cir. 2001)). For example, "the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised [decision]." WildEarth Guardian v. Nat'l Park Serv., 604 F.3d at 1199 (see also Nat. Res. Def. Council v. Costle, 561 F.2d 904, 910 (D.C. Cir. 1977)("It is not enough to deny intervention under Rule 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation."). The Court therefore concludes that the litigation may affect adversely Santa Ana Pueblo's interest.

### C. THE FEDERAL DEFENDANTS DO NOT REPRESENT ADEQUATELY SANTA ANA'S INTERESTS.

Regarding adequate representation, the Court concludes that the Federal Defendants do not represent adequately Santa Ana Pueblo's interests. To establish inadequate representation, "the possibility of divergence of interest need not be great," and the showing "is easily made when the representative party is the government." Kane Cnty., 928 F.3d at 894 (citing Nat. Res. Def. Council v. Costle, 578 F.2d at 1346; Utah Ass'n of Counties v. Clinton, 255 F.3d at 1254). For example, in WildEarth Guardian v. Nat'l Park Serv., the Tenth Circuit permits an environmental group to intervene as of right, explaining that, "[i]n litigating on behalf of the general public, the government is obligated to consider broad spectrum of views, may of which may conflict with the particular interest of the would-be intervenor." 604 F.3d at 994-97.

Santa Ana demonstrates that the Federal Defendants do not adequately represent its interests. On August 18, 2023, the Federal Defendants file a Motion to Dismiss acknowledging that the United States recognizes San Felipe Pueblo's title to portions of Private Claims Four, Five, and Six that extend into the disputed land. See Motion at 11-12. Santa Ana Pueblo, however, opposes that position, asserting that "San Felipe does not now and never has had title to those portions of those private claims." Motion at 11-12. Because the Federal Defendants' position conflicts with Santa Ana Pueblo's, they do not represent adequately Santa Ana Pueblo's interests.

San Felipe Pueblo nevertheless contends that the Federal Defendants adequately represent Santa Ana Pueblo's interests, because they purportedly share an identical objective. See Response at 7. Relying on Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n, 787 F.3d 1068 (10th Cir. 2015), San Felipe Pueblo argues that adequacy is presumed when "the objective of the applicant for intervention is identical to that of one of the parties." 787 F.3d at 1072. San Felipe Pueblo maintains that the shared objective here is to uphold the Federal Defendants' actions in the underlying lawsuit. See Response at 7. This argument is not sound, because the Federal Defendants and Santa Ana Pueblo do not share identical objectives. In Tri State Generation and Transmission Ass'n Inc., the defendants and the intervenor share identical objectives, because they file nearly identical pleadings and raise "essentially the same arguments." 787 F.3d at 1071. Here, by contrast, Santa Ana Pueblo disputes the Federal Defendants' position that San Felipe Pueblo holds title to portions of Private Claims Four, Five, and Six -- claims that Santa Ana asserts jeopardize its own title to those parcels. See Reply at 10. Thus, their objectives diverge, and the Federal Defendants cannot be said to represent Santa Ana's interests adequately.

Having determined that Santa Ana Pueblo satisfies all rule 24(a) elements, the Court concludes that Santa Ana Pueblo may intervene as of right. Because Santa Ana seeks limited intervention, and the Court concludes intervention appropriate, Santa Ana Pueblo may file a brief

addressing the Federal Defendants' Motion to Dismiss but may not file a separate motion to dismiss.  The Court has limited resources and is trying to address one motion to dismiss without modifying the pending motions.  The Court can address all the parties briefing and issues on the one motion to dismiss.  Santa Ana Pueblo's brief shall explain its position on sovereign immunity.  San Felipe and the Federal Defendants may file responses if they wish.  The purpose of this limited intervention is to aid the Court in determining whether it has jurisdiction; if further intervention becomes necessary, the Court will address that issue in due course.

## II.    <u>SANTA ANA PUEBLO MAY PERMISSIVELY INTERVENE</u>.

Santa Ana Pueblo also meets the standard for permissive intervention under rule 24(b).  Rule 24(b) provides that a court may allow permissive intervention when: "(i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights."  <u>Forest Guardians v. U.S. Dep't of Interior</u>, No 02-1003 JB, 2004 WL 3426413, at 10-11 (D.N.M. 2004)(Browning, J.).  As discussed above, San Felipe Pueblo does not dispute whether Santa Ana Pueblo's Motion is timely.  <u>See</u> <u>generally</u> Response at 1-16.  Indeed, the Motion is timely because Santa Ana Pueblo seeks leave to intervene before any significant activity occurs in the case.  And although San Felipe Pueblo believes that Santa Ana Pueblo files its Motion strategically to coincide with San Felipe Pueblo's briefing obligation in relation to the Federal Defendants' motion to dismiss, San Felipe Pueblo concedes that there is no extreme prejudice to San Felipe Pueblo arising from the timing of Santa Ana Pueblo's application for limited intervention.  <u>See</u> Response at 3.  This leaves only the question whether the applicant's claim or defense and the main action have a question of law or fact in common.

Santa Ana Pueblo satisfies this requirement.  Santa Ana Pueblo's defenses -- and its limited proposed participation -- turn on the same central question of law and fact that animates San Felipe

Pueblo's suit: which Pueblo holds valid title to the approximately 564 acres of disputed land. San Felipe Pueblo's Claims seek a declaration that it holds superior title and challenge the Federal Defendants' administrative actions that cleared the cloud from Santa Ana Pueblo's title. See Complaint, Prayer for Relief ¶¶ (a)-(i), at 64-65. Santa Ana Pueblo, for its part, seeks to defend the legitimacy of the same administrative actions and to preserve its own title to that same tract. See Motion at 8-11. Both sets of arguments thus hinge on the same factual history, the same private-land-grant boundaries, and the same legal principles governing Pueblo land title and federal authority. Because the main action and Santa Ana Pueblo's defenses rise or fall on the same title determination, they share common questions of law and fact within the meaning of rule 24(b). Permissive intervention is therefore appropriate.

## III.    SANTA ANA PUEBLO HAS ARTICLE III STANDING.

The Court concludes that Santa Ana has Article III standing and that intervention therefore is appropriate. To seek relief in federal court, a party must demonstrate Constitutional standing. See Bennett v. Spear, 520 U.S. 154, 162 (1997). A prospective intervenor must show: (i) injury in fact; (ii) causation; and (iii) redressability. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). To establish injury-in-fact, the injury alleged by the intervening party must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan v. Defs. Of Wildlife, 504 U.S. at 560. To establish causation, the claimed injury must be fairly traceable to the challenged action and not the result of the independent action of some third party not before the court. See Lujan v. Defs. Of Wildlife, 504 U.S. at 560. To establish redressability, it must be likely, as opposed to merely speculative, that the court's favorable decision will redress the injury. See Lujan v. Defs. Of Wildlife, 504 U.S. at 561. When a party seeks to intervene to defend governmental action, it must also show that it would be "injured in fact by the setting aside of the government's action it seeks to defend, that this injury could be caused by the invalidation, and the

injury would be prevented if the government action is upheld." Forest Cnty. Potawatomi Cmty. v. United States, 317 F.R.D. 6, 11 (D.D.C. 2016).

Santa Ana Pueblo meets this standard.  San Felipe Pueblo challenges a federal action that grants Santa Ana Pueblo title to the disputed land more than a century ago.  See Motion at 7.  San Felipe Pueblo not only seeks to invalidate that action, but also seeks a declaration that it holds title to the same land.  See Motion at 7.  If successful, San Felipe Pueblo's claims will cause Santa Ana Pueblo to lose approximately 564 acres that Santa Ana Pueblo currently holds.  See Motion at 7. This injury is concrete and particularized, directly traceable to San Felipe Pueblo's requested relief, and upholding the federal actions redress this injury.  Santa Ana Pueblo therefore has Article III standing to intervene.

San Felipe Pueblo's sole counterargument is that Santa Ana Pueblo's asserted interest is not legally cognizable.  See Response at 4.  San Felipe Pueblo contends that the Pueblo Land Act extinguishes Santa Ana Pueblo's right to claim title based on pre-Algodones and Brown facts, because Santa Ana Pueblo does not file any action before the statute of limitations expires on May 31, 1934.  See Response at 4 (citing United States v. Thompson, 941 F.2d 1074, 1081 (10th Cir. 1991)).  This argument is not sound, because it goes to the underlying action's merits rather than the threshold standing inquiry.  To succeed on a motion to intervene, the proposed-intervenor must prove: (i) injury-in-fact, (ii) causation, and (iii) redressability.  See Lujan v. Defs. Of Wildlife, 504 U.S. at 560-61.  The standard does not require a showing of success on the merits.  The Tenth Circuit's "liberal approach to intervention" further supports this conclusion.  Kane Cnty., Utah v. United States, 928 F.3d at 890.  In the related context of rule 19 joinder, the Tenth Circuit insists that "the underlying merits of the litigation are irrelevant."  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1291 (10th Cir. 2003).  Accordingly, the Court concludes that Santa Ana Pueblo has Article III standing sufficient to permit intervention.

IT IS ORDERED that: the (i) Motion for Limited Intervention as of Right in Order to File Motion to Dismiss, and Memorandum In Support, filed September 8, 2023 (Doc. 32), is granted in part and denied in part; (ii) the Pueblo of Santa Ana may file a brief on the Federal Defendants' Motion to Dismiss and Memorandum In Support, filed August 18, 2023 (Doc. 29); and (iii) the Pueblo of Santa Ana may not file its own motion to dismiss.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Annette T. Brown
Timothy J. Humphrey, Sr.
Stetson Law Offices, P.C.
Albuquerque, New Mexico

-- and --

Tim Hennessy
Steven J. Bloxham
Peebles Kidder Bergin & Robinson
Sacramento, California

-- and --

Rebecca L. Kidder
Peebles Kidder Bergin & Robinson
Rapid City, South Dakota

    *Attorneys for the Plaintiff*

Evan C. Blackstone
  Attorney
Office of the Solicitor
United States Department of the Interior
Albuquerque, New Mexico

-- and --

Matthew Marinelli
  Senior Attorney

Environmental & Natural Resources Division
United States Department of Justice
Washington, D.C.

    *Attorneys for the Defendants*

Richard W. Hughes
Allison K. Athens
Rothstein Donatelli LLP
Santa Fe, New Mexico

    *Attorneys for the Intervenor Defendant*