## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PUEBLO OF SAN FELIPE, a Federally
Recognized Indian Tribe,

       Plaintiffs,

vs.                                                                                    No. CIV 23-0296 JB/LF

DEBRA HAALAND, Secretary of the Interior;
ROBERT ANDERSON, Solicitor, Department
of the Interior; TRACY STONE-MANNING,
Director, Bureau of Land Management; JERRY
GIDNER, Director, Bureau of Trust Funds
Administration; DARRYL LACOUNTE,
Director, Bureau of Indian Affairs; PATRICIA
MATTINGLY, Acting Regional Director,
Bureau of Indian Affairs Southwest Region;
SANTEE LEWIS, Superintendent, Bureau of
Indian Affairs Southern Pueblos Agency, and
DEPARTMENT OF THE INTERIOR,

       Defendants,

vs.

PUEBLO OF SANTA ANA,

       Intervenor-Defendant.

### MEMORANDUM OPINION[1]

    **THIS MATTER** comes before the Court on the Plaintiff's Motion for Leave to File First

Amended Complaint, filed July 29, 2024 (Doc. 78)("Motion to Amend"). The Court holds a

hearing on February 25, 2025. See Clerk's Minutes at 1, filed February 25, 2025 (Doc. 99);

---

[1] On March 21, 2025, the Court enters an Order granting in part and denying in part the Plaintiff's Motion for Leave to File First Amended Complaint, filed July 29, 2024 (Doc. 78). See Order at 1-2, filed March 21, 2025 (Doc. 101). In the Order, the Court states that it will "issue a Memorandum Opinion at a later date more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

Transcript of Hearing at 1 (dated February 25, 2025)("Tr.").[2]  The primary issue is whether the Court should give Plaintiff San Felipe Pueblo leave to file its First Amended Complaint challenging the Department of the Interior's resurvey of the property boundary between San Felipe Pueblo and Intervenor-Defendant Santa Ana Pueblo; the resurvey cedes additional land to Santa Ana Pueblo.  The Court grants in part and denies in part the Motion.  The Court concludes that: (i) San Felipe Pueblo cannot amend the Complaint to include any claims challenging Santa Ana Pueblo's title to real property in which the United States owns an interest as a trustee, because of The Quiet Title Act's Indian Lands Exception, 28 U.S.C. § 2409a; (ii) San Felipe Pueblo also cannot amend the Complaint to include any claims challenging Santa Ana Pueblo's title to real property in which the United States owns an interest as a trustee under the Administrative Procedure Act, 5 U.S.C. § 702, because the Quiet Title Act governs and the Administrative Procedure Act does not waive sovereign immunity; (iii) San Felipe Pueblo cannot assert a claim challenging Santa Ana Pueblo's title under the Fifth Amendment to the Constitution of the United States because The Quiet Title Act governs; (iv) San Felipe Pueblo cannot assert a breach-of-trust claim, because The Quiet Title Act governs; and (v) San Felipe Pueblo can amend the Complaint to allege that the Solicitor of the Department of the Interior's directive ordering the Bureau of Land Management to conduct a boundary resurvey is arbitrary and capricious under the Administrative Procedure Act.

## FACTUAL BACKGROUND

This case's underlying facts revolve around a disputed parcel of land between San Felipe Pueblo and Santa Ana Pueblo's lands in New Mexico, between Albuquerque and Santa Fe along

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

the Interstate 25 ("I-25") corridor.  Plat of the San Felipe Pueblo Grant (dated February 1, 1907), filed April 5, 2023 (Doc. 1-1)("Hall Plat").  See Map of Dispute Area (dated September 20, 2013), filed April 5, 2023 (Doc. 1-2)("BLM Resurvey").  San Felipe Pueblo is Santa Ana Pueblo's immediate northern neighbor; the disputed parcel lies at San Felipe Pueblo's southern boundary and Santa Ana Pueblo's northern boundary.  The dispute is which Pueblo owns the land and is thus entitled to compensation that the State highway authorities paid in the 1980s to compensate for the construction of I-25 through the land; that compensation sat in escrow pending determination of the land's ownership until 2018, when the Interior Department paid the money to Santa Ana.  See Complaint ¶ 136-137, at 39; id. ¶¶ 187-193, at 50-52.

This dispute stretches back hundreds of years.  The relevant history begins in 1689, when the King of Spain provides a land grant to San Felipe Pueblo for its land in the region.  See Complaint ¶ 21, at 9.  In 1763, Santa Ana Pueblo, displaced from the area farther north it traditionally had inhabited, purchases from a Spanish settler the El Ranchito Tract, which lies directly south of the San Felipe Pueblo's land.  See Complaint ¶¶ 155-157, at 43-44.  San Felipe Pueblo, however, asserts ownership of parts of this land and began selling parts of it to Spanish settlers.  See Pueblo of Santa Ana v. Baca, 844 F.2d 708, 709 (10th Cir. 1988)("Baca").

Interested parties have litigated the land's ownership several times, under multiple statutory and regulatory schemes, over the course of more than 200 years.  Parties first litigate the matter in 1813, when Santa Ana Pueblo petitions the Spanish authorities for a declaration that the sales are invalid, because San Felipe Pueblo has no right in the land that San Felipe Pueblo sells; Spanish authorities inspect the land, a tribunal in Santa Fe hears three days of evidence, and Spain decides in Santa Ana Pueblo's favor.  See Baca, 844 F.2d at 709.  San Felipe Pueblo appeals that decision through two layers of appellate review, both times losing, which culminates at the Real

Audiencia of Guadalajara, a court of last resort for the territory in which the dispute occurs.  See Baca, 844 F.2d at 710-12.

New Mexico came under the United States' control per the Treaty of Guadalupe Hidalgo of 1848, which obligates the United States to recognize all land titles under Spanish and Mexican law.  See Complaint ¶¶ 22-23, at 9.  In 1854, Congress passes a law creating the office of the Surveyor General of New Mexico, who ascertains land titles under Spanish and Mexican law, and recommends them for Congressional recognition.  See Complaint ¶ 24, at 9.  San Felipe Pueblo submits its 1689 Spanish grant to the Surveyor General, who determines it is valid, see Complaint ¶¶ 28-31, at 10-11; upon the Surveyor General's confirmation, Congress orders San Felipe Pueblo's land be surveyed, and that a patent[3] for it be issued based on the survey, see Complaint ¶ 32, at 11.  Reuben E. Clements surveys San Felipe Pueblo's land in 1860, and, in 1864, President Abraham Lincoln issues San Felipe Pueblo's patent that incorporates the Clements Survey.  See Complaint ¶ 35, at 12.

In 1897, under the Private Land Claims Act, 26 Stat. 854 ("PLCA"), interested parties again litigate the issue; the Court of Private Land Claims determines the boundary encroaches into the El Ranchito Tract, which was decided effectively in San Felipe's favor.  See Complaint ¶¶ 36-37, at 12; id. ¶¶ 50-77, at 17-22.  Santa Ana Pueblo files a petition, pursuant to the PLCA, against the United States in the PLCA Court to establish its holdings.  Complaint ¶¶ 53-59, at 17-19.  The PLCA Court confirms Santa Ana Pueblo's petition and orders a survey of Santa Ana Pueblo's

_____

[3]A land patent is a sovereign's dispensation of public lands' ownership to a person.  See Patent, Black's Law Dictionary (11th ed. 2019)(defining "patent" as "[t]he governmental grant of a right, privilege, or authority. . . [or t]he official document so granting[,] . . . [a]lso termed public grant"); id. (defining "land patent" as "[a]n instrument by which the government conveys a grant of public land to a private person"); id. Letters Patent (defining "letters patent" as "[a] document granting some right or privilege, issued under governmental seal but open to public inspection . . . [or a] governmental grant of the exclusive right to use an invention or design. . . . [a]lso termed (in both senses) patent deed").

lands which subsequently should be patented, conditioned on the premise that the patent not award to Santa Ana Pueblo any lands that the subsequently conducted resurvey determines part of San Felipe Pueblo's 1864 patent.  See Complaint ¶¶ 58-62, at 18-19.  Santa Ana Pueblo does not appeal that decision.  See Complaint ¶ 62, at 19.  Subsequent surveys and resurveys confirm largely the 1860 Clements Survey boundaries of the San Felipe Patent-El Ranchito Purchase boundaries, see Complaint ¶¶ 63-70, at 19-21; as noted above, the 1860 Clements Survey favors San Felipe Pueblo.  Another survey, the 1916 Joy Survey, also favors San Felipe Pueblo.  See Complaint ¶ 78-79, at 23.

In the 1920s and 1930s, two proceedings under the Pueblo Lands Act, 43 Stat. 636 ("PLA"), United States v. Brown and United States v. Algodones Land Co., again establish the land's boundaries in San Felipe's favor based on the 1916 Joy Survey.  See Complaint ¶¶ 108-109, at 31-32 (describing United States v. Brown); Complaint ¶¶ 113-124, at 32-35 (discussing United States v. Algodones Land Co.).  A supplemental report that the Pueblo Lands Board issues in 1931, however, notes that earlier federal surveys which favor San Felipe Pueblo over Santa Ana Pueblo are contested.  See Complaint ¶ 120, at 34.  The Lands Board's supplemental report recommends a "friendly suit" between San Felipe Pueblo and Santa Ana Pueblo to resolve the issue, but neither Pueblo waives its sovereign immunity to adjudicate the matter.  See Complaint ¶ 120, at 34.

Later, New Mexico highway authorities develop I-25, whose path crosses through the Conflict Area.  See Complaint ¶¶ 134, at 38.  Neither San Felipe Pueblo nor Santa Ana Pueblo object to the highway's construction through their lands, but they dispute -- this dispute is the one up to the present day -- entitlement to compensation for that portion of I-25 crossing the Conflict Area, i.e., based on which Pueblo's land it is.  See Complaint ¶¶ 136-145, at 39-41.  The United States' Bureau of Indian Affairs places in escrow the I-25 compensation, pending some final resolution of the ownership matter.  See Complaint ¶¶ 136-145, at 39-41.  Although not directly

concerning the dispensation of the highway monies, other litigation addresses the Conflict Area's ownership.  See Complaint ¶¶ 149-158, at 42-44 (discussing Baca, 844 F.2d 708; United States v. Thompson, 941 F.2d 1074 (10th Cir.  1991)).

Santa Ana Pueblo in 1989 petitions the Department of the Interior to correct the survey of Santa Ana Pueblo's patent, based on alleged errors in the surveys that produce overlap between its El Ranchito Purchase tract and San Felipe Pueblo's patent, i.e., creating the Conflict Area.  See Complaint ¶ 159, at 45.  In the 1988 Tarr Opinion, the Interior Department determines that it lacks the authority to correct surveys based on Congressional patents.  See Complaint ¶ 163, at 46.  Upon an appeal by a different Pueblo of the 1988 Tarr Opinion's conclusion, the United States District Court for the District of Columbia determines that the Tarr Opinion's position is arbitrary and capricious, and so the Interior Department must reconsider whether it lacks a correction authority. See Pueblo of Sandia v. Babbitt, No. CIV 94-2624, 1996 WL 808067 (D.D.C. Dec. 10 1996)(Greene, J.).  The Interior Department reconsideres the 1988 Tarr opinion, and, in 2000, issues the Leshy Opinion, determining that it possesses the authority to correct such surveys as that upon which Santa Ana Pueblo's patent is based.  See Complaint ¶¶ 161-165, at 45-46.  The Interior Department urges San Felipe Pueblo and Santa Ana Pueblo to negotiate a settlement of the matter.  See Memorandum from Hilary C. Tompkins, Solicitor, to Kevin K. Washburn, Assistant Secretary for Indian Affairs at 2, 3 n.9 (dated July 7, 2013), filed August 18, 2023 (Doc. 29-1)("Tompkins Opinion").  Although San Felipe Pueblo and Santa Ana Pueblo came close to resolution -- whereby San Felipe Pueblo relinquishes its claim to the Conflict Area, and, in exchange, Santa Ana supports San Felipe Pueblo's pursuit of purchasing replacement land with the federal government's assistance -- negotiations ultimately fail, and the parties reach no settlement.  See Tompkins Opinion at 3 n.9.

In 2013, the Interior Department issues the Tompkins Opinion, which determines that, given the failure of negotiations between San Felipe Pueblo and Santa Ana Pueblo, the Interior Department needs to exercise the authority, which the 2000 Leshy Opinion determines that the Secretary possesses, to correct Santa Ana Pueblo's patent's survey.  <u>See</u> Complaint ¶ 173, at 48. After the 2013 Tompkins Opinion, the Interior Department conducts a corrected resurvey of the disputed area ("Corrective Resurvey"), decides in Santa Ana Pueblo's favor the disputed area, and publishes notice of its intent to file the Corrective Resurvey.  Complaint ¶¶ 174-178, at 48-49.  San Felipe Pueblo appeals to the Interior Board of Land Appeals ("IBLA") the notice, but, in 2017, IBLA decides against San Felipe Pueblo as to the Corrective Resurvey's validity.  Complaint ¶¶ 179-185, at 49-50.  In 2018, the Interior Department formally files the plats based on the Corrective Resurvey.  <u>See</u> Complaint ¶ 186, at 50.

Based on the Corrective Resurvey's determination that the Conflict Area belongs to Santa Ana Pueblo, the Interior Department disburses to Santa Ana Pueblo upon Santa Ana Pueblo's formal request, the I-25 compensation funds that had been in escrow for more than thirty years. <u>See</u> Complaint ¶¶ 187-191, at 50-51.  After disbursing the funds to Santa Ana Pueblo, the Interior Department informs San Felipe Pueblo that it has disbursed the escrow funds.  <u>See</u> Complaint ¶¶ 187-191, at 50-51.  San Felipe Pueblo objects by letter to the Interior Department's action of disbursing to Santa Ana Pueblo the escrow funds without first informing San Felipe Pueblo.  <u>See</u> Complaint ¶ 192, at 52.  San Felipe Pueblo contends that the Interior Department's actions violate the Interior Department's trust responsibilities to San Felipe Pueblo.  <u>See</u> Complaint ¶ 192, at 52. The Interior Department responds that the 2013 Tompkins Opinion and the 2017 IBLA decision upholding the Corrective Resurvey dictate its actions, and the Interior Department acknowledges that San Felipe Pueblo may pursue any available avenues for legal relief.  <u>See</u> Complaint ¶ 193, at 52.

## PROCEDURAL BACKGROUND

On April 5, 2023, San Felipe Pueblo files its Complaint.  In the Complaint, San Felipe Pueblo alleges the following causes of action: (i) claims under the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), Complaint ¶¶ 197-217, at 53-57; (ii) claims under the Declaratory Relief Act, 28 U.S.C. § 2201, see Complaint ¶¶ 218-227, at 57-60; and (iii) a Breach of Trust Responsibility, see Complaint ¶¶ 228-239, at 60-64.  San Felipe Pueblo bases its APA claims on the actions that the Interior Department took in resurveying the San Felipe Pueblo-Santa Ana Pueblo boundary lines and in paying the escrow funds based on its determination that Santa Ana Pueblo is entitled to those funds:

> 206.    Opinion M-37027, the April 5, 2017 IBLA decision, the April 20, 2017 filing of the resurvey, the 2017 change to the record ownership of the Conflict Area in BIA TAAMS, and the January 11, 2018 disbursement of the tribal trust funds (the Resurvey Actions) were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A).
>
> 207.    The Resurvey Actions were also contrary to constitutional right, power, privilege or immunity, in violation of the APA. 5 U.S.C. § 706(2)(B).
>
> 208.    The Resurvey Actions were also in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the APA. 5 U.S.C. § 706(2)(C).
>
> 209.    San Felipe therefore requests that the Resurvey Actions be declared unlawful and set aside.
>
> 210.    San Felipe further requests the Defendants be ordered to restore the boundaries and title of the San Felipe Patent, and related matters, to the status that existed before the Resurvey Actions, including restoring the record ownership in the BIA TAAMS to San Felipe, replenishing the tribal trust account, refiling previous surveys and plats or resurveying, as appropriate, and restoring the survey boundary monuments that were removed.
>
> . . . .
>
> 215.    Rather than paying such compensation to San Felipe, the Defendants caused such compensation to be disbursed to Santa Ana on January 11, 2018.

216.    The Department and its officials have unlawfully withheld or unreasonably delayed the payment to San Felipe of such compensation, in violation of the APA. 5 U.S.C. § 706(1).

217.    San Felipe therefore requests that the Court compel the Defendants to take such actions as are necessary to promptly make full payment to San Felipe of the right-of-way and easement compensation mandated by law, with interest.

Complaint ¶¶ 206-210, at 55-56; id. ¶¶ 215-217, at 57.  San Felipe Pueblo's Declaratory Relief claims and its Breach of Trust Responsibility claims also revolve around the actions the Interior Department took regarding its Corrective Resurvey:

224.    San Felipe therefore requests under 28 U.S.C. § 2201 a judicial declaration that San Felipe's title and right to sole possession of the lands within the boundaries of the San Felipe Patent has been previously and conclusively determined; that no claims adverse to San Felipe's title and right may be validly asserted, including Santa Ana's claim to the Conflict Area; and that the Department of the Interior and its officials have no authority to interfere with, and are obligated to recognize, San Felipe's title and right to sole possession and quiet enjoyment of the lands within the boundaries of the San Felipe Patent, including the Conflict Area.

. . . .

227.    San Felipe requests a judicial declaration that its title and right to sole possession of the lands within the boundaries of the San Felipe Patent, including the Conflict Area, satisfies the sole condition for disbursement of the entire tribal trust account to San Felipe.

. . . .

237.    The actions of the Defendants in dissipating and disbursing the tribal trust account breached Defendants' trust responsibilities to San Felipe.

. . . .

239.    The actions of the Defendants as the trustee responsible for safeguarding the property of San Felipe as recorded within the BIA TAAMS, to alter the record ownership of the San Felipe Patent sometime between April 20, 2017 and November 14, 2017, without any notice to San Felipe and without any legal right to do so are egregious, and San Felipe requests that the Court order the Defendants to restore the record ownership status of the San Felipe Patent to San Felipe in the BIA TAAMS.

Complaint ¶¶ 224-239, at 59-63.  San Felipe Pueblo's Prayer for Relief reads:

a.      A judgment declaring that the final decision in United States v. Algodones Land Co. conclusively and finally quieted San Felipe's unextinguished title to the lands within the boundaries of the San Felipe Patent.

b.      A judgment declaring that all claims adverse to San Felipe's title are now barred by the expiration of the limitations periods provided in the Pueblo Lands Act.

c.      A judgment declaring the Defendants' legal obligation to recognize and to not interfere with San Felipe's title and its right to sole possession and quiet enjoyment of the lands within the boundaries of the San Felipe Patent and enjoining the Defendants from interfering with such title, right, and quiet enjoyment.

d.      A judgment declaring unlawful and setting aside Solicitor's Opinion M-37027, the April 5, 2017 IBLA decision, the April 20, 2017 filing of the 2013 resurvey, the alteration of title to the San Felipe Patent in the BIA TAAMS between April 20, 2017 and November 17, 2017, and the January 11, 2018 disbursement of the tribal trust account funds.

e.      A judgment ordering the Defendants to restore to their previous status San Felipe's title and right to lands within the San Felipe Patent boundaries, and to make all necessary and appropriate restoration to the BIA TAAMS, surveys and plats on file, and the monuments marking the boundaries of the San Felipe Patent.

f.      A judgment declaring that San Felipe's title and right to sole possession of the lands within the boundaries of the San Felipe Patent, including the Conflict Area, satisfies the sole condition for disbursement of the entire tribal trust account to San Felipe.

g.      A judgment compelling the Secretary of the Interior to provide a full accounting of the tribal trust account, to replenish the tribal trust account to the appropriate balance, with interest, as of the date of the Court's order, and to then release and pay the entire tribal trust account balance to San Felipe.

h.      In the alternative to restoration of and disbursement of the tribal trust account to San Felipe, a judgment in equity compelling the Defendants to pay equitable restitution to San Felipe in the amount that should be in the tribal trust account as of the date of the Court's order.

i.      An award of San Felipe's attorney fees, costs, and such other relief as may be just and equitable.

Complaint, Prayer for Relief ¶¶ (a)-(i), at 64-65.

On August 18, 2023, the Federal Defendants file their MTD (Doc. 29).  They argue that the Court lacks jurisdiction over San Felipe Pueblo's lawsuit.  See MTD at 12-30.  In the Federal Defendants' view, the Complaint seeks, in effect, to have the Court adjudicate a dispute over lands in which the United States asserts an interest -- specifically, a dispute over Indian lands -- which means that San Felipe Pueblo can bring the suit only under the QTA's framework for waiving federal sovereign immunity.  See MTD at 12-20.  Because, however, the QTA does not waive federal sovereign immunity as to disputes over Indian lands, there is no applicable sovereign immunity waiver, and, in turn, the Court lacks jurisdiction to hear the Complaint.  See MTD at 20-26.  The Federal Defendants argue that all of the Complaint's theories of liability -- the APA claims, Declaratory Relief claims, and trust-breach claims -- fail, because they turn on the underlying land dispute, over which the Court lacks jurisdiction.  See MTD at 12-26.  The Federal Defendants offer additional arguments against the Complaint based on standing and the unavailability of free-floating trust responsibilities untethered to specific statutory provisions.  See MTD at 26-34.

On March 29, 2024, the Court enters a 40-page Order granting the Federal Defendants' MTD.  See Order, filed March 29, 2024 (Doc. 55)("Order Granting MTD").  The Order grants the MTD, because the Court determines that it lacks jurisdiction to hear San Felipe Pueblo's Complaint.  See Order Granting MTD at 38.  Although styled as an APA case, San Felipe Pueblo's Complaint asserts, at heart, a claim for title in Indian land that the QTA bars on the basis of sovereign immunity.  See Order Gratning MTD at 38.  The Court therefore dismisses San Felipe Pueblo's case without prejudice.  See Order Granting MTD at 39.  On April 26, 2024, San Felipe Pueblo files a Motion for Reconsideration of the Order Granting MTD (Doc. 59).  On March 7, 2025, however, San Felipe Pueblo withdrew that motion (Doc. 100).

Before the Court can file the promised opinion more fully addressing the reasons for the Order Granting MTD, on July 29, 2024, San Felipe Pueblo files Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 78)("Motion to Amend").  The parties agree that they do not want the Court to write the full opinion regarding the Order Granting MTD, but instead, they ask the Court to shift focus to the Motion to Amend.  See Hearing Tr. at 4:1-7:25.  In the Motion to Amend, San Felipe Pueblo moves to amend its original Complaint "to clarify the factual bases for relief; to add additional bases for relief including the Fifth Amendment of the United States Constitution; to amend the existing claims for relief; to amend the relief sought."  Motion to Amend at 1.  Proposed First Amended Complaint, filed July 29, 2024 (Doc. 78-1)("Proposed FAC").  In the Proposed FAC, San Felipe Pueblo asserts that the Interior Department's boundary resurvey exceeds the Interior Department's authority under the ultra vires doctrine, violates the APA, and constitutes an unlawful taking in violation of the Fifth Amendment.  See Proposed FAC at 4-6.

On July 29, 2024, San Felipe Pueblo files Plaintiff's Memorandum in Support of the Motion for Leave to Amend the Complaint and Supplemental Briefing in Response to June 7, 2024, Order, filed July 29, 2024 (Doc. 79)("Memorandum").  The Memorandum argues that the Court should grant leave to amend the Complaint, because the Federal Defendants are unable to prove that the amendment would be futile.  See Memorandum at 3.  The Memorandum also addresses the Court's June 7, 2024, Order requesting briefing on the legal significance of patents and the proper scope of federal trust responsibilities.  See Memorandum at 4.

On November 1, 2024, the Federal Defendants file the Opposition to the Pueblo of San Felipe's Motion for Leave to File First Amended Complaint, filed November 29, 2024 (Doc. 86)("Response").  In the Response, Federal Defendants assert three arguments.  See generally Response.  First, the Federal Defendants assert that the Court should not grant San Felipe Pueblo's

leave to amend, because the Court lacks jurisdiction over San Felipe Pueblo's claims.  See Response at 9.  Second, the Federal Defendants argue that San Felipe Pueblo cannot recast its quiet title claim as a takings claim, because San Felipe Pueblo cannot dodge the Indian lands exception with a Constitutional claim aimed at securing title to Santa Ana Pueblo's land.  See Response at 31.  Third, the Federal Defendants assert that the Court have to dismiss San Felipe Pueblo's proposed trust-related claims because the QTA does not permit San Felipe Pueblo to evade the United States' retention of sovereign immunity over suits seeking to divest Santa Ana Pueblo of its restricted fee lands.  See Response at 34.

On November 1, 2024, the Intervenor-Defendant, Santa Ana Pueblo, files the Pueblo of Santa Ana's Response to Plaintiff's Motion for Leave to File First Amended Complaint, filed November 1, 2024 (Doc. 87)("Intervenor's Response").  The Intervenor's Response asserts several arguments.  See generally Intervenor's Response.  First, Santa Ana Pueblo argues that the Federal Defendants' corrections of erroneous surveys of the patented lands are within their authority, because Congress confers on what became the Bureau of Land Management the power to survey "any Indian or other reservations, or any lands."  Intervenor's Response at 12.  Second, Santa Ana Pueblo asserts that the history of the surveys of the San Felipe Pueblo Grant demonstrates their flawed nature, because the Tenth Circuit has finds in two separate cases that the Clements' survey of the San Felipe Grant is seriously deficient.  See Intervenor's Response at 16.  Third, Santa Ana Pueblo argues that the former overlap lands have been in Santa Ana Pueblo's exclusive ownership and possession since 1763, and that the United States fully recognizes its title.  See Intervenor's Response at 21.  Fourth, it asserts that the Proposed FAC still seeks title to Indian Land, and thus there is no waiver of the United States' sovereign immunity.  See Intervenor's Response at 35.  Fifth, Santa Ana Pueblo contends that the Court's question about the United States' competing trust obligations to the two Pueblos does not change the analysis, because the United States has

trust obligations both to San Felipe Pueblo and to Santa Ana Pueblo.  See Intervenor's Response at 36.

On January 21, 2025, San Felipe Pueblo files the Plaintiff's Reply Brief to Federal Defendants and Defendant-Intervenor's Response Briefs in Opposition to the Plaintiff's Motion to Amend the Complaint and Supplemental Briefing in Response to June 7, 2024, Order, (Doc. 92)("Reply").  In the Reply, San Felipe addresses three arguments.  See generally Reply.  First, San Felipe Pueblo asserts that the QTA does not prevent APA review of the Federal Defendants' wrongful actions, because the Federal courts have allowed Tribes and individual Indians to bring claims in district court when there is interference with their Congressionally confirmed real property interests.  See Reply at 9.  Second, it asserts that the Court has jurisdiction over the Fifth Amendment claims under the APA, because the QTA does not bar Fifth Amendment claims.  See Reply at 33.  Third, San Felipe Pueblo argues that its breach-of-trust claims VIII and IX in the Proposed FAC are not subject to dismissal as futile, because, absent an Act of Congress, the Federal Defendants have no authority to diminish the San Felipe Patent's boundaries.  See Reply at 39.

On April 7, 2025, Intervenor-Defendant Santa Ana Pueblo files its Motion to Reconsider, In Part, Court's Order of March 21, 2025 (Doc. 101) and Memorandum In Support (Doc. 105)("Motion to Reconsider").  The sole issue raised by Santa Ana Pueblo is whether the statute of limitations applies to San Felipe Pueblo's APA claim.  See Motion to Reconsider at 1-2.  Santa Ana Pueblo argues that the Tompkins Opinion is the final agency action that triggered the statute of limitations, as it determined rights, obligations, and legal consequences.  See Motion to Reconsider at 6.  Santa Ana Pueblo further asserts that San Felipe Pueblo's protest of the resurvey was not a challenge to the Tompkins Opinion, as the BLM and IBLA could only consider whether the resurvey complied with that opinion.  See Motion to Reconsider at 8-9.  Based on these

conclusions, Santa Ana Pueblo argues that an APA challenge to the Tompkins Opinion is barred by the statute of limitations.  See Motion to Reconsider at 9.

On April 21, 2025, the Federal Defendants filed their Response to Pueblo of Santa Ana's Motion to Reconsider, In Part, the Court's March 21, 2025 Order (Doc. 109)("Federal Defendants' Response to Motion to Reconsider").  They contend that the only agency action before the Court is the April 5, 2017, IBLA decision.  See Federal Defendants' Response to Motion to Reconsider at 2.  The Federal Defendants do acknowledge, however, that the Court will need to address the judicial review of the Tompkins Opinion in the context of any cross-motions for summary judgment.  See Federal Defendants' Response to Motion to Reconsider at 2-3.

On May 5, 2025, San Felipe Pueblo files its Response to Defendant-Intervenor's Motion to Reconsider, In Part, the Court's March 21, 2025 Order (Doc. 114)("Plaintiff's Response to Motion to Reconsider").  First, San Felipe Pueblo argues that Santa Ana Pueblo lacks standing to file the Motion to Reconsider, as it was not granted unlimited intervention as a right.  See Plaintiff's Response to Motion to Reconsider at 2.  Second, San Felipe Pueblo contends that the Motion is improper because neither the Federal Defendants nor Santa Ana Pueblo challenged the First Amended Complaint on statute of limitations grounds.  See Plaintiff's Response to Motion to Reconsider at 4.  Third, San Felipe Pueblo argues that the Tompkins Opinion is not the final agency action, because it was not the "consummation of the agency's decision making process."  Plaintiff's Response to Motion to Reconsider at 8.

On May 19, 2025, Santa Ana Pueblo files its Reply In Support of Motion to Reconsider (Doc. 115)("Reply to Motion to Reconsider").  First, Santa Ana Pueblo asserts that it is not precluded from filing the Motion to Reconsider due to its status as an intervenor, as the Court has allowed it to participate fully in the case.  See Reply to Motion to Reconsider at 3.  Second, Santa Ana Pueblo argues that it has not waived its limitations argument, as the issue was first raised by

the Court in prior filings.  <u>See</u> Reply to Motion to Reconsider at 5.  Third, Santa Ana Pueblo

reiterates that the Tompkins Opinion is the final agency action, triggering the statute of limitations.

<u>See</u> Reply to Motion to Reconsider at 6.

## LAW REGARDING MOTIONS TO AMEND

A party may amend its pleadings once as a "matter of course" within twenty-one days of

serving the pleading or twenty-one days after a service of a motion under rules 12(b), (e), or (f) of

the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 15(a)(1).  Rule 15(a)(2) provides: "In all

other cases, a party may amend its pleading only with the opposing party's written consent or the

court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P.

15(a)(2).  Under rule 15(a), the court freely should grant leave to amend a pleading where justice

so requires.  <u>See</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. 571, 579-80 (D.N.M.

2010)(Browning, J.); <u>Youell v. Russell</u>, 2007 WL 709041, at *1-2 (D.N.M. 2007)(Browning, J.);

<u>Burleson v. ENMR-Plateau Tele. Coop.</u>, 2005 WL 3664299, at *1-2 (D.N.M. 2005)(Browning,

J.).  The Supreme Court states that, in the absence of an apparent reason such as "undue delay, bad

faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.," the court should freely give leave to amend.  <u>Fomen v. Davis</u>, 371 U.S. at

182.  Furthermore, the Tenth Circuit holds that district courts should grant a plaintiff leave to

amend when granting leave would yield a meritorious claim.  <u>See</u> <u>Curley v. Perry</u>, 246 F.3d 1278,

1284 (10th Cir. 2001).  <u>See also</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80.

"The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the

maximum opportunity for each claim to be decided on its merits rather than on procedural

niceties.'"  <u>B.T. ex rel. G.T. v. Santa Fe Pub. Schs.</u>, 2007 WL 1306814, at *2 (D.N.M.

2007)(Browning, J.)(quoting <u>Minter v. Prime Equip. Co.</u>, 451 F.3d 1196, 1204 (10th Cir. 2006)).

A court should deny leave to amend under rule 15(a), however, if the proposed "amendment would be futile." Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999). See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80. An amendment is "futile" if the pleading "as amended, would be subject to dismissal." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)). A court also may deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S.W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)). The Tenth Circuit also stresses that "'untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay.'" Eckert v. Dougherty, 658 Fed. Appx. 401, 410 (10th Cir. 2016)(unpublished)(quoting Frank v. U.S.W., Inc., 3 F.3d at 1365-66)(citations omitted in Eckert v. Dougherty). Moreover, "'[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.'" Eckert v. Dougherty, 658 Fed. Appx. at 410-11 (quoting State Distribs., Inc. v. Glenmore Distilleries Co., 738 F.2d 405, 416 (10th Cir. 1984)).

Undue delay is where the proposed amendment comes after the deadline to amend pleadings and where the amending party has no adequate explanation for the delay. See Minter v. Prime Equip. Co., 451 F.3d at 1206 ("[The Tenth] Circuit . . . focuses primarily on the reasons for the delay. We have held that denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'")(quoting Frank v. U.S.W. Inc., 3 F.3d at 1363-66). It is not the delay that warrants denial for leave to amend, but when such delay becomes

undue: "The longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'" Minter v. Prime Equip. Co., 451 F.3d at 1205 (quoting Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004)). See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1130 (10th Cir. 1998)(concluding that a plaintiff unduly delays in filing a pleading where it appears that the "plaintiff was aware of all the information on which his proposed amended complaint was based prior to filing the original complaint" and the plaintiff files the motion to amend "five months after discovery cut off"). Courts find undue delay when a party moves to amend the pleading to include information the party should have known earlier or had an earlier opportunity to include in the pleading:

> A court may thus deny the motion for leave to amend because of untimeliness, especially when the party seeking an amendment knows, should have known, or has reason to know of the facts supporting the claim in the proposed amendment, but fails to include it when the original complaint was filed.

Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *5 (D.N.M. 2008)(Browning, J.). See Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)(noting that a motion to amend "was not based on new evidence unavailable at the time of the original filing" and denying the motion on that basis).

## LAW REGARDING SOVEREIGN IMMUNITY

"The United States cannot be sued without its consent." Garcia v. United States, 709 F.Supp.2d 1133, 1137 (D.N.M.2010)(Browning, J.). "Congressional consent -- a waiver of the traditional principle of sovereign immunity -- is a prerequisite for federal-court jurisdiction." Garcia v. United States, 709 F.Supp.2d at 1137-38. "The plaintiff bears the burden of proving that Congress has waived sovereign immunity for all of his claims." Garcia v. United States, 709 F.Supp.2d at 1138. See Bork v. Carroll, 449 Fed.Appx. 719, 721 (10th Cir.2011)("So it is that a

plaintiff seeking to invoke the jurisdiction of the federal courts bears the burden of identifying an applicable statutory waiver of sovereign immunity when challenged to do so."); Summa v. United States, 936 F.2d 584, 1991 WL 114638, at *3 (10th Cir.1991)(unpublished table decision)(holding in a Federal Tort Claims Act case that the "Plaintiffs bore the burden of proving that the district court had subject matter jurisdiction over their claims")(citing Miller v. United States, 710 F.2d 656, 662 (10th Cir.1983)).

1.    **General Sovereign Immunity Principles.**

It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983).  See FDIC v. Meyer, 510 U.S. 471, 475 (1994): United States v. Testan, 424 U.S. 392, 399; United States v. Sherwood, 312 U.S. 584, 586 (1941).  As with any jurisdictional issue, the party bringing suit against the United States bears the burden of proving that the United States has waived sovereign immunity.  See James v. United States, 970 F.2d 750, 753 (10th Cir.1992).  A waiver of sovereign immunity cannot be implied and must be unequivocally expressed.  See United States v. Nordic Vill., Inc., 503 U.S. 30, 33-34 (1992); United States v. Mitchell, 445 U.S. 535 (1980); United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 930 (10th Cir.1996).  The United States' agencies also have sovereign immunity absent a waiver.  See FDIC v. Meyer, 510 U.S. 471, 475 (1994)("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit").

A.    **28 U.S.C. §§ 1346(f) and 2409a.**

Section 1346(f) provides: "The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."  28 U.S.C. § 1346(f).  Section 2409a provides in relevant part:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands . . . .

28 U.S.C. § 2409a(a). These statutes, together referred to as the QTA, provide subject-matter jurisdiction and a waiver of sovereign immunity for quiet-title actions against the United States. See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 217 (2012)("From its title to its jurisdictional grant to its venue provision, the Act speaks specifically and repeatedly of 'quiet title' actions. That term is universally understood to refer to suits in which a plaintiff not only challenges someone else's claim, but also asserts his own right to disputed property.").

"Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." United States v. Mottaz, 476 U.S. 834, 841 (1986). The Tenth Circuit states that, "as its legislative history makes clear, the QTA applies even where the plaintiff claims an estate less than a fee simple . . . [such as] an easement." McKay v. United States, 516 F.3d at 850 (alteration in original).

28 U.S.C. § 2409a(g) provides:

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g). The Supreme Court states: "The limitations period is a central condition of the consent given by the Act." United States v. Mottaz, 476 U.S. at 843. A plaintiff's claim being timely under this statute of limitations is a jurisdictional prerequisite to suit under 28 U.S.C. § 2409a. See Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands, 461 U.S. 273, 287 (1983)("Block v. North Dakota")("When waiver legislation contains a statute of limitations, the

limitations provision constitutes a condition on the waiver of sovereign immunity."); Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation, 599 F.3d 1165, 1175 (10th Cir.2010)("Timeliness under subsection [(g)][4] is a jurisdictional prerequisite to suit under section 2409a.")(alteration in original)(footnote added).

"The twelve-year limitations period is strictly construed in favor of the United States." Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation, 599 F.3d at 1176. The Tenth Circuit has "held that for purposes of determining when 'the claim' accrues under § 2409a(f), '[a]ll that is necessary is a reasonable awareness that the government claims some interest adverse to the plaintiffs.'" Vincent Murphy Chevrolet Co., Inc. v. United States, 766 F.2d 449, 452 (10th Cir.1985). "Knowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the Government claims *some* interest adverse to the plaintiff's." Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation, 599 F.3d at 1176 (emphasis in original).

Furthermore, "the United States need not assert a full legal title in the disputed property for the limitations period to accrue; the claimed adverse interest in the title of the property merely must be substantial enough to create a cloud on title." Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation, 599 F.3d at 1176. The Tenth Circuit holds that the knowledge of deed restrictions in place that benefit the United States is sufficient to trigger the running of the statute of limitations under 28 U.S.C. § 2409a(f). See Vincent Murphy Chevrolet Co., Inc. v. United States, 766 F.2d at 452 ("Appellants concede knowledge of a 'claim' -- the deed restrictions -- as early as 1965. This is all that is necessary under § 2409a(f)."). The Tenth Circuit elaborates:

> While the Supreme Court in *Block* indicated that the statutes waiving immunity should not be construed in an unduly restrictive manner, it cautioned that

---

[4] An older version of 2409a has the statute-of limitations provision appear in subsection (f) of the statute rather than in subsection (g).

these statutes could not be interpreted in such a manner as to "'extend the waiver beyond that which Congress intended.'"

To hold that the twelve-year statute of limitations did not begin to run until conditions began changing would give rise to an interpretation of the term "claim" under § 2409a(f) which could extend the limitations period indefinitely. We cannot extend the waiver of immunity under the quiet title act beyond that which Congress could have intended and we refuse to do so without a clear expression of legislative intent.

Appellants argue that in the twelve-year period following 1965, they would not have had a cause of action to quiet title since there would have been no justiciable controversy as the cause of action could not have accrued until conditions began changing. While such argument evokes empathy, we do not believe that it comports with the limited waiver of sovereign immunity Congress intended, and in construing the statute of limitations strictly as a condition to the waiver of sovereign immunity, we must reject appellants' argument.

Vincent Murphy Chevrolet Co., Inc. v. United States, 766 F.2d at 452.

Although 28 U.S.C. § 2409a contains a sovereign immunity waiver, it is limited to title

claims that do not involve "trust or restricted Indian lands." 28 U.S.C. § 2409a(a).

Thus, the Act's waiver of sovereign immunity is qualified by an exception for suits challenging title to lands held in trust for Indian tribes: "when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands, the Quiet Title Act does not waive the Government's immunity."

Governor of Kan. v. Kempthorne, 516 F.3d 833, 841 (10th Cir.2008)(quoting Neighbors for

Rational Dev., Inc. v. Norton, 379 F.3d 956, 961 (10th Cir.2004)).

The Supreme Court emphasizes the Indian-land exception's importance: "If we were to

allow claimants to try the Federal Government's title to land under an officer's-suit[5] theory, the

---

[5] An "officer's suit" is a means for obtaining relief in a title dispute with the federal government before Congress passed the WTA. Block v. North Dakota, 461 U.S. at 281.

In the typical officer's suit involving a title dispute, the claimant would proceed against the federal officials charged with supervision of the disputed area, rather than against the United States. The suit would be in ejectment or, as here, for an injunction or a writ of mandamus forbidding the defendant officials from interfering with the claimant's property rights.

Indian land exception to the QTA would be rendered nugatory." <u>Block v. North Dakota</u>, 461 U.S. at 285 (footnote added). Thus, "when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands, the Quiet Title Act does not waive the government's immunity." <u>United States v. Mottaz</u>, 476 U.S. at 843. <u>See</u> <u>Wildman v. United States</u>, 827 F.2d 1306, 1309 (9th Cir.1987)("The ordinary reason[s] for enforcing sovereign immunity . . . are reinforced when Indian lands are in question."). "As long as the United States has a 'colorable claim' to a property interest based on that property's status as trust or restricted Indian lands, the QTA renders the government immune from suit." <u>State of Alaska v. Babbitt</u>, 75 F.3d 449, 451-52 (9th Cir.1996).

"Because § 2409a limits the sovereign immunity of the United States, it must be interpreted according to federal law." <u>Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation</u>, 599 F.3d at 1177. "However, federal courts may properly look to state law as an aid in determining the application of statutory language to specific facts." <u>Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation</u>, 599 F.3d at 1177. "In particular, 'questions involving ownership, transfer and title to real estate have traditionally been resolved according to the laws of the state where the realty is located.'" <u>Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation</u>, 599 F.3d at 1177. "But 'such state law should be compatible with the purpose of [the legislation so as] to find the rule that will best effectuate the federal policy.'" <u>Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation</u>, 599 F.3d at 1177 (alteration in original).

## **ANALYSIS**

---

<u>Block v. North Dakota</u>, 461 U.S. at 281.

The Court addresses San Felipe Pueblo's five arguments in turn.  See generally Proposed FAC.  First, the Court concludes that San Felipe Pueblo cannot amend the Complaint to include a claim challenging the validity of Santa Ana Pueblo's title to the disputed land, in which the United States has an interest.  San Felipe Pueblo's amended claim challenging title, at its core, a claim under the Quiet Title Act and its Indian Lands Exception, which together deprive the Court of subject-matter jurisdiction to San Felipe Pueblo's challenges, because the United States retains sovereign immunity.  Second, San Felipe Pueblo cannot amend the Complaint to include any claims challenging Santa Ana Pueblo's title to real property in which the United States owns an interest as a trustee under the APA, because the QTA governs, and the APA does not waive sovereign immunity.  Third, San Felipe Pueblo cannot assert a claim challenging Santa Ana Pueblo's title under the Fifth Amendment, because the QTA governs.  Fourth, San Felipe Pueblo cannot assert any breach-of-trust claims, because they necessarily require the Court to determine San Felipe Pueblo has superior title.  Fifth, San Felipe Pueblo can amend the Complaint to allege that the Solicitor of the Department of the Interior's directive ordering the BLM to conduct a boundary resurvey is arbitrary and capricious under the APA.

## I.   THE QUIET TITLE ACT BARS SAN FELIPE PUEBLO FROM ASSERTING CLAIMS SEEKING RELIEF TO QUIET SANTA ANA'S TITLE TO THE DISPUTED LAND.

The QTA, 28 U.S.C. § 2409a, provides the exclusive means for resolving title disputes involving real property in which the United States asserts an interest by waiving the United States' sovereign immunity.  See 28 U.S.C. § 2409a; Block v. North Dakota, 461 U.S. 273, 275 (1983).  The QTA has an exception, however, known as the Indian Lands Exception, which explicitly bars suits challenging title to "trust or restricted Indian lands."  28 U.S.C. § 2409a(a).  "Trust land" describes land to which the United States holds title on behalf of Tribes or individual American Indians.  Fee to Trust Land Acquisitions, U.S. Department of the Interior Indian Affairs,

https://www.bia.gov/bia/ots/fee-to-trust (last visited March 21, 2025)("Trust and Fee Info Page").

"Restricted land," also known as "Restricted fee land," describes land to which a Tribe or individual American Indian holds title, but requires the Interior Secretary's approval to alienate or encumber.  Trust and Fee Info Page.

Here, the QTA bars San Felipe Pueblo from asserting in its Proposed FAC claims that, in substance, seek to quiet title to the disputed land.  The QTA applies, because the Proposed FAC repeatedly reveals San Felipe Pueblo's effort to secure title to the disputed land in a manner adverse both to the United States and to Santa Ana Pueblo.  First, San Felipe Pueblo acknowledges that the United States holds the disputed land in restricted fee and acquired the land "for San Felipe from Louis Ilfeld on December 30, 1936."  Proposed FAC ¶ 95, at 231.  Second, San Felipe Pueblo alleges that, following a land-boundary resurvey concluding that Santa Ana Pueblo owns the disputed land, the United States unlawfully disburses trust-account funds to Santa Ana Pueblo.  See Proposed FAC ¶ 153-54, at 37-38.  Third, San Felipe Pueblo seeks a declaratory judgment that the Interior Department's land-boundary resurvey unlawfully alters San Felipe Pueblo's rightful ownership of the disputed land that the 1864 Patent grants.  See Proposed FAC ¶ 6, at 4; ¶ 162, at 39.  That intent to quiet Santa Ana Pueblo's title is also evident from several other statements in the Proposed FAC:

> Defendants lacked any legal authority to adjudicate or otherwise determine ownership of any restricted fee lands held by San Felipe within the Conflict Area.
>
> . . . .
>
> Defendants' actions deprived San Felipe of liberty and property without due process of law in violation of the Fifth Amendment to the U.S. Constitution.
>
> . . . .
>
> Take such other restorative actions necessary to reserve the harm caused by Defendant's *ultra vires* interference with San Felipe and its members rights to use, possession, and San Felipe's sovereign jurisdiction over lands . . .

Proposed FAC at 57-59.  In short, San Felipe Pueblo asks the Court to determine that it holds superior title to the disputed land over the United States and Santa Ana Pueblo.  The QTA prohibits the Court from making that determination.

### A.  SAN FELIPE PUEBLO'S ARGUMENT THAT IT DOES NOT SEEK LAND FROM THE UNITED STATES IS NOT ACCURATE.

San Felipe's primary argument is that the QTA does not apply, because San Felipe Pueblo does not seek land from the United States.  See Reply at 9.  Instead, San Felipe Pueblo characterizes its requested relief as

> [i]njunctive, mandamus, and declaratory relief sought to overturn the unauthorized 'corrective resurvey' and M-Opinion 37027; to restore monuments and markers of official government surveys obliterated by Federal Defendant officials; to restore the IIM account unlawfully disbursed by Federal Defendant officials; to restore TAAMS records altered unlawfully, and to provide other equitable relief necessary to restore the constitutionally and statutorily protected rights of the Pueblo of San Felipe as they existed prior to Federal Defendant officials' unlawful actions.

Reply at 9-10.  Essentially, San Felipe Pueblo contends that this is not a quiet-title action, because the land in question is already quieted in its favor, and therefore any actions adverse to its interests are unlawful.  The Court previously rejects that argument in its Order Granting MTD -- and disagrees with the San Felipe Pueblo again here.

The Proposed FAC in replete with language where San Felipe challenges title to "trust or restricted Indian lands."  28 U.S.C. § 2409a.  See Proposed FAC ¶ 6, at 4; ¶ 162, at 39; see Proposed FAC at 57-59.  For example, San Felipe Pueblo asserts: "The actions of the Defendants purporting to alter boundaries of the 1864 Patent and the title to any lands within those boundaries are null and void *ab initio*."  Proposed FAC ¶ 168, at 40.  Likewise, San Felipe Pueblo states: "San Felipe requests a declaration that Defendants had no legal authority to interfere with San Felipe's jurisdictional territory or to remove lands from the application of San Felipe's criminal and civil regulatory laws and ordinances, and that any such actions are void."  Proposed FAC ¶ 187, at 43.

Despite San Felipe Pueblo's insistence that it does not seek to quiet title, the Proposed FAC's plain language demonstrates otherwise.  As Abraham Lincoln famously remarked: "How many legs does a dog have if you call the tail a leg?  Four.  Calling a tail a leg doesn't make it a leg."  The Socratic Method, https://www.socratic-method.com/quote-meanings-and-interpretations/abraham-lincoln-how-many-legs-does-a-dog-have-if-you-call-his-tail-a-leg-four-saying-that-a-tail-is-a-leg-doesnt-make-it-a-leg (last visited November 22, 2025).  So too here -- the Court must call a tail a tail.  Taken at face value, the pleading asks the Court to determine that San Felipe Pueblo's title is superior to the United States' interest in the disputed land -- a dispute that the QTA governs and that the Indian Lands Exception bars.

**B.  THE UNITED STATES HAS AN INTEREST IN THE DISPUTED LAND SUCH THAT THE QTA IS APPLICABLE.**

San Felipe Pueblo next contends that the QTA does not apply, because the United States' interest in restriction on alienation is not adverse to San Felipe Pueblo.  See Reply at 13.  San Felipe relies on Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, (2012)("Patchak"), where the Supreme Court explains that adverse claimants refer to plaintiffs who assert claims to property antagonistic to the United States' interest.  See Reply at 13 (citing Patchak, 567 U.S. at 219-220).  According to San Felipe Pueblo, the United States' interest here is best characterized as a duty to restrict alienation, which aligns rather than conflicts with San Felipe Pueblo's interest in protecting its patent boundaries.  See Reply at 13.  San Felipe further asserts that the United States' interest in restricting alienation of lands it does not own is unaffected by the ultra vires actions challenged in the Proposed FAC -- just as the Unites States' interest in Pueblo of Taos v. Adrus, 475 F. Supp. 359 (D.D.C. 1979)(Gasch, J.)("Taos Pueblo"), and Pueblo of Sandia v. Babbitt, No. CIV 94-2624, 1996 WL 808067 (D.D.C. December 10, 1996)(Greene, J.)("Sandia Pueblo"), does not change.  See Reply at 13.  The Court disagrees with

this argument for the same reason it does in its Order Granting MTD.  See Order Granting MTD at 30-33.

As the Court discusses in the Order Granting MTD, Patchak holds that, to raise a QTA bar, the party seeking land from the United States must be adverse to the United States.  Cf. Patchak, 567 U.S. at 220 ("Congress . . . 'intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property.'  We repeat: 'adverse claimants,' meaning plaintiffs who themselves assert a claim to property antagonistic to the Federal Government's." (quoting Block, 461 U.S. at 286)).  Understood through Patchak's lens, Taos Pueblo and Sandia Pueblo stand for the proposition that an Indian Tribe is not an "adverse claimant" when seeking federal agency land adjacent to the Indians' land; in such circumstances these cases provide that a boundary-line dispute raises only an APA claim and not a QTA bar. Taos Pueblo, 475 F. Supp at 365 ("This action . . . is not a quiet title action; title to both parcels of land involved rests with the United States, and has since the lands were acquired from private parties several decades ago."); Sandia Pueblo, 1996 WL 808067, at *4 ("[T]he Pueblo does not seek title to the disputed claim area; title would remain in the United States government.  The Pueblo seeks merely to have the property at issue transferred from the control of one federal agency . . . to another.").  In this sense, under the rubric of Patchak, Taos Pubelo and Sandia Pubelo both are holdings about who constitutes an "adverse claimant": they hold that the Pueblos before them do not constitute an "adverse claimant."

The Court agrees with the United States' suggestion, however, that it makes a difference that here, on either side of the Conflict Area's boundary line, are two Pueblos, and not one Pueblo and an unrelated federal agency.  Whereas in Taos Pueblo and Sandia Pueblo, the Indian claims to land were deemed not adverse to the federal agency's interests on the other side, here, San Felipe Pueblo's interest in the land and right thereto is antagonistic to Santa Ana Pueblo's.  Although

both interests exist under the United States' overarching control of the land, the interests still are adverse to one another.  Stated within the Patchak framework, and taking into consideration the nature of the Pueblos' trust relationship with the United States, the rule is that: the trust beneficiary's property claims in Taos Pueblo and Sandia Pueblo, i.e., Taos Pueblo's and Sandia Pueblo's claims, are not adverse to the trustee's property claims, i.e., the United States' claims on the United States Forest Service's behalf, to the same extent as, here, one trust beneficiary's property claims, i.e., San Felipe Pueblo's claims, are adverse to those of another, i.e., Santa Ana Pueblo's claims.  A trustee's highest obligations are to its beneficiaries, see Pegram v. Herdrich, 530 U.S. 211, 224 (2000)("'The most fundamental duty owed by the trustee to the beneficiaries of the trust is the duty of loyalty.'" (quoting 2A A. Scott & W. Fratcher, Trusts § 170, at 311 (4th ed. 1987)), so the trustee's obligations to a beneficiary are present when a co-beneficiary asserts against the trustee an interest at heart antagonistic to the other beneficiary; such antagonism is of a greater degree than when the beneficiary asserts against the trustee interests that are adverse to those of the trustee alone.  Vis-à-vis Santa Ana Pueblo, San Felipe Pueblo is an "adverse claimant." Patchak, 567 U.S. at 220 (quoting Block, 461 U.S. at 286).  In turn, insofar as the United States stands in Santa Ana Pueblo's shoes as Santa Ana Pueblo's trustee and adopts as its own Santa Ana Pueblo's property interests, then San Felipe Pueblo "assert[s] a claim to property antagonistic to the Federal Government's." Patchak, 567 U.S. at 220.  In this way, one beneficiary versus another beneficiary, i.e., the present circumstances, presents adverse property interests in a way not present when it is one beneficiary versus the trustee alone, i.e., the circumstances in Taos Pueblo and Sandia Pueblo.  San Felipe Pueblo's interest therefore is adverse to the United States interest such that the QTA applies.

**C.     THE DISPUTED LAND IS INDIAN LAND.**

The QTA's Indian Lands Exception preserves the United States' sovereign immunity from quiet title suits "when they involve Indian lands." Patchak, 567 U.S. at 216. See U.S.C. § 2409a(a) (establishing that the Indian Lands Exception bars claims seeking to quiet title "to trust or restricted Indian lands"). Here, San Felipe Pueblo's suit involves Indian lands, because the disputed land straddles San Felipe Pueblo and Santa Ana Pueblo's boundaries. San Felipe Pueblo and Satna Ana Pueblo are Pueblos and, thus, are Indian lands. The Court, therefore, lacks subject-matter jurisdiction over San Felipe Pueblo's suit under the QTA's Indian Lands Exception; the United States retains sovereign immunity. San Felipe Pueblo may not amend its Complaint to include any claims requiring the Court to determine whether San Felipe Pueblo has the superior land claim over the United States' interest in the disputed land.

## II.    SAN FELIPE CANNOT AMEND THE COMPLAINT TO INCLUDE A CLAIM CHALLENGING SANTA ANA'S TITLE UNDER THE APA, BECAUSE THE QTA GOVERNS.

Next, San Felipe asserts an APA challenge to the Interior Department's land boundary resurvey actions, including filing the resurvey, the 2017 change to the disputed land's record ownership, the 2018 disbursement of Tribal trust funds, and other "ongoing actions of the Defendants to deny San Felipe access to the lands and waters within the Conflict Area." Proposed FAC ¶ 237, at 94. Both the Supreme Court and the Tenth Circuit consider land ownership disputes between plaintiffs and the United States in which a plaintiff invokes the APA to circumvent the QTA. In both cases, the QTA governs and bars the APA claims challenging title.

In Block v. North Dakota ex  rel. Board of University & School Lands, 461 U.S. 273 (1983)("Block"), North Dakota sues the United States to settle a land title dispute regarding a Little Missouri River riverbed. 461 U.S. at 277-79. The United Staes asserts title to most of the disputed area, while North Dakota asserts that it owns the riverbed. See Block, 461 U.S. at 273. Although North Dakota asserts several jurisdictional bases for its claim that it is entitled to injunctive and

mandamus relief -- including under the APA -- the Supreme Court holds that "North Dakota's action [can] proceed, if at all, only under the QTA." Block, 461 U.S. at 278, 292-93. (brackets added). The Supreme Court reasons that "the 'balance, completeness, and structural integrity' of the statute belied the contention that it 'was designed merely to supplement other putative judicial relief.'" Block, 461 U.S. at 285 (quoting Brown v. GSA, 425 U.S. 820, 832 (1976)). The Supreme Court further explains that, if North Dakota can seek relief under other statutes, then "all the carefully-crafted provisions of the QTA deemed necessary for the protection of the national public interest could be averted . . . by artful pleading." Block, 461 U.S. at 284-85.

As to the Tenth Circuit, in Iowa Tribe of Kansas & Nebraska v. Salazar, 607 F.3d 1225 (10th Cir. 2010)("Iowa Tribe"), the plaintiffs, comprising of several neighboring Indian Tribes, sue the Interior Secretary for taking a small tract of land known as the "Shriner Tract" into trust on behalf of the Wyandotte Tribe of Oklahoma. 607 F.3d at 1227. The Wyandotte Tribe plans to open a casino on the land; the plaintiffs are signatories to a Tribal-State compact permitting them to operate gaming establishments in Kansas and are concerned that the land trust will interfere with their operations. See 607 F.3d at 1227. The Tenth Circuit first explains that, for the initial claim against the Interior Secretary's taking of the Shriner Tract into trust, the APA provides a cause of action and waives sovereign immunity. See 607 F.3d at 1230. "Once the Secretary took the Shriner Tract into trust, however, the nature of the plaintiffs' claim changed." 607 F.3d at 1230. At this point, the plaintiffs' remedy is removing the Shriner Tract from being held in trust or otherwise encumbering the land's use while in trust. See 607 F.3d at 1230. The Tenth Circuit, therefore, follows the Supreme Court's pronouncement in Block that the QTA provides the "exclusive means by which adverse claimants challenge the United States' title to real property." 607 F.3d at 1230 (quoting Block, 461 U.S. at 286). "Consequently, if plaintiffs'

case is to proceed, it must do so exclusively under the QTA; the APA is no longer relevant given the relief sought." Iowa Tribe, 607 F.3d at 1230.

Here, San Felipe seeks the same relief as the plaintiffs in Iowa Tribe: title to real property that the United States owns in trust or in restricted fee. As discussed above, the United States holds the disputed land in restricted fee as Santa Ana Pueblo's trustee, and San Felipe Pueblo seeks to quiet Santa Ana Pueblo's title to San Felipe Pueblo's "congressionally confirmed land boundaries." Proposed FAC ¶ 6, at 4. San Felipe Pueblo, therefore, is like the plaintiffs in Block and in Iowa Tribe, and, accordingly, can seek title to the disputed property only through the QTA. The QTA's Indian Lands Exception bars San Felipe Pueblo's title dispute claim, regardless how San Felipe frames its challenge.

Furthermore, the APA does not waive sovereign immunity for San Felipe Puelo's title dispute claim. In Patchak, the Supreme Court notes that the APA's waiver of sovereign immunity "comes with an important carve-out: The waiver does not apply if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought by the plaintiff. § 702." 567 U.S. at 215. In Patchak, a plaintiff sues the Interior Secretary under the APA for acquiring land in trust for an Indian Tribe who plans to open a casino. See 567 U.S. at 211. There, the United States argues that the QTA's Indian Lands Exception "satisfies the APA's carve-out" and thus forbids the plaintiff's suit. Patchak, 567 U.S. at 215. The Supreme Court ultimately holds that the QTA does not apply, because the plaintiff does not assert any competing interest in the acquired land and is only a neighbor to the land. See Patchak, 567 U.S. at 216-17. The Supreme Court notes, however, that, if the plaintiff asserts that he owns the land, and that the Interior Secretary cannot take it into trust, the QTA bars the plaintiff's suit for the United States' reasons, i.e., the QTA's Indian Land Exception. Patchak, 567 U.S. at 216. This case is like the hypothetical that the Supreme Court discusses in Patchak. Here, San Felipe Pueblo's Proposed FAC challenges

the United States' title to Indian land owned in restricted fee, and, therefore, the QTA and its Indian Lands Exception applies. San Felipe Pueblo does not account for the fundamental principle that the APA does not permit courts to review agency actions where another statute, such as the QTA's Indian Lands Exception, expressly precludes such challenges. Because San Felipe Pueblo's title dispute claim ultimately concerns land in which the United States has an interest as Santa Ana Pueblo's trustee, San Felipe Pueblo cannot use the APA to circumvent the QTA's Indian Lands Exception.

## III.    SAN FELIPE CANNOT AMEND THE COMPLAINT TO INCLUDE FIFTH AMENDMENT TAKINGS CLAIMS, BECAUSE THE QTA GOVERNS.

San Felipe Pueblo's Sixth Claim for Relief -- brought under the Fifth Amendment Due Process Clause -- is not exempt from the QTA. See Reply at 33. San Felipe Pueblo argues that the claim "requests only the reversal of the Federal Defendant's ultra vires 'corrective resurvey' and the subsequent unlawful actions flowing from it, which interfered with San Felipe's rights to access land and the money that the United States did not and does not own." Reply at 33. The Court rejects again this argument. San Felipe Pueblo's assertion that its claim is not a quiet-title action, because the land is "already quieted" in its favor and thus any action that the United States takes is unlaw, is simply another attempt to relitigate title.

The claim challenges actions that allegedly interfere with San Felipe Pueblo's access to the land and the Tribal trust funds that the United States disburses -- issues that necessarily implicate title. Those issues implicate title, because San Felipe Pueblo's claim that the agency's actions are unlawful depends on its contention that San Felipe Pueblo, not Santa Ana Pueblo, owns the disputed land. The Proposed FAC's prayer for relief confirms this point: "San Felipe requests that Defendants' actions be declared unlawful and set aside; that Defendants be ordered to restore the boundaries of the 1864 San Felipe Patent to the status that existed before the Defendants' actions

. . . ."  Proposed FAC ¶ 235, at 48.  Because the QTA provides the exclusive means to challenge title to land in which the United States asserts an interest, and because the Indian Lands Exception preserves the United States' sovereign immunity from suits seeking title to Indian lands, the QTA bars San Felipe Pueblo's Fifth Amendment.

Courts repeatedly hold that parties cannot use Constitutional claims to evade the QTA.  In Montanans for Multiple Use v. Barbouletos, 542 F. Supp. 2d 9 (D.D.C. 2008)(Hogan, J.)("Barbouletos"), the plaintiffs allege that federal officials unlawfully close public roads.  See Barbouletos, 542 F. Supp. 2d at 18.  The plaintiffs argued that the defendant's actions amounted to a Fifth Amendment taking rather than a claim under the QTA.  See 542 F. Supp. 2d at 18.  The Honorable Thomas Hogan, Chief District Judge for the United States District Court for the District of Columbia, rejects this Constitutional challenge to the scope of Federal authority, because the "Supreme Court made abundantly clear in Block that the QTA provides the exclusive means to challenge the United States' title to real property, and despite their attempt to characterize it otherwise, plaintiffs here seek to challenge the United States' title to real property outside the QTA and its strictures."  Barbouletos, 542 F. Supp. 2d at 19-20.  Similarly, in Shawnee Trail Conservancy v. United States Department of Agriculture, 222 F.3d 383 (7th Cir. 2000)("Shawnee"), the Seventh Circuit dismisses Constitutional claims, because "Congress intended for suits that require resolution of a disputed claim to real property in which the United States claims an interest to be brought under the QTA."  222 F.3d at 388.  The same reasoning applies here.  San Felipe Pueblo's constitutional claim challenges the United States' asserted interest in the disputed land, and its requested "reversal" of the corrective resurvey implicates federal title and control.  See Reply at 33.  Accordingly, the QTA forecloses jurisdiction over this claim.

IV.    **SAN FELIPE PUEBLO CANNOT AMEND THE COMPLAINT TO INCLUDE BREACH-OF-TRUST CLAIMS, BECAUSE THE QTA GOVERNS.**

San Felipe Pueblo asserts two claims in the Proposed FAC alleging that the United States breaches its trust responsibility to San Felipe Pueblo.  See Reply at 40.  Although San Felipe Pueblo identifies several ways in which the United States purportedly breached its duty, the claims share a common -- and jurisdictionally fatal -- premise: that, "with respect to the conflict area, the United States bears an unambiguous trust responsibility to San Felipe alone."  Reply at 40.  San Felipe argues: "The United States does not have a trust duty to the Pueblo of Santa Ana in relation to any of the land located within the original Pueblo of San Felipe Spanish land grant from Spain patented by Congressional order to San Felipe."  Memorandum at 22.  In other words, San Felipe Pueblo's trust-duty claims assume that it exclusively owns the disputed land, that Santa Ana Pueblo does not own the land, and that the United States therefore violates its trust duty to San Felipe Pueblo.

These allegations indicate that the claims are, in substance, attempts to quiet title in San Felipe Pueblo's favor.  San Felipe Pueblo's trust-duty arguments depend on a judicial determination that its title claim is superior to Santa Ana Pueblo's.  The QTA's Indian lands exception bars claims seeking to quiet title "to trust or restricted Indian lands."  28 U.S.C. § 2409a(a).  San Felipe Pueblo cannot avoid this jurisdictional bar by repackaging its title arguments as breach-of-trust claims.  Because the United States holds an interest in the disputed land, and because San Felipe Pueblo's claims would require the Court to determine that San Felipe Pueblo holds superior title, the QTA applies and precludes jurisdiction.

V.    **SAN FELIPE PUEBLO CAN AMEND THE COMPLAINT TO INCLUDE A CLAIM CHALLENGING THE INTERIOR SOLICITOR'S DIRECTIVE TO CONDUCT A LAND BOUNDARY RESURVEY.**

San Felipe Pueblo contends that this case is not about quieting title, but rather about the allegedly unlawful Interior Department action of resurveying the San Felipe Pueblo and Satna Ana Pueblo boundaries in violation of the APA, 5 U.S.C. § 702. See Reply at 9. As discussed above, however, several of San Felipe Pueblo's claims assert that its interest in the disputed land is superior. The QTA bars these claims. San Felipe may pursue, however, a narrow claim under the APA challenging the Interior Solicitor's initial directive ordering the BLM to conduct a land boundary resurvey.

The Tenth Circuit holds that certain APA claims may proceed without running afoul of the QTA if they do not assert any competing interest in the disputed property. For example, in Iowa Tribe, the Interior Secretary places land in trust for the Wyandotte Tribe of Oklahoma using funds appropriated under Public Law 98-602, which required that such funds be used for the purchase of the property. See Iowa Tribe, 607 F.3d at 1228. Several Tribes and the Governor of Kansas sue under the APA, arguing that the Wyandotte Tribe has not used only Public Law 98-602 funds to acquire the land, and that the Interior Secretary's decision to take the tract into trust therefore is unlawful. See Iowa Tribe, 607 F.3d at 1228. At that stage, the plaintiffs seek judicial review only of an agency decision -- the Interior Secretary's decision to acquire the land -- making their claims proper under the APA, which provides both a cause of action and waiver of sovereign immunity for individuals suffering "a legal wrong because of agency action." Iowa Tribe, 607 F.3d at 1230 (citing 5 U.S.C. § 702). Because the plaintiffs' claims do not yet claim rightful ownership of the property, sovereign immunity does not bar their action. See Iowa Tribe, 607 F.3d at 1230. Once the Interior Secretary completes the trust acquisition, however, the plaintiffs change their claims to seek removal of the tract from trust or to limit how the land can be used while it remains in trust. See Iowa Tribe, 607 F.3d at 1230. At that point, because the requested relief implicates title to land that the United States holds, the Tenth Circuit holds that the QTA bars the claims.

Based on the Tenth Circuit's holding in Iowa Tribe, San Felipe Pueblo may amend its complaint to include an APA claim, but only one that challenges the Interior Solicitor's initial directive ordering the BLM to conduct a boundary resurvey.  San Felipe Pueblo may not assert, however, either expressly or implicitly, that the directive is unlawful because San Felipe Pueblo is the rightful owner of the land.  The QTA bars any APA claim in which the San Felipe Pueblo asserts a competing ownership interest in the disputed tract.  The only permissible APA challenge here is a procedural one -- like the plaintiffs one in Iowa Tribe -- alleging a procedural defect in the United States' action, such as the use of improper authority or process, rather than ownership of the land.  In short, San Felipe Pueblo may challenge how the United States acts, but not who owns the land.

Santa Ana Pueblo contends that the APA's six-year statute of limitations bars San Felipe Pueblo's challenge to the Interior Solicitor's initial boundary resurvey.  See Hearing Tr. at 75:13-16 (Hughes).  The six-year statute of limitations for civil claims against the United States generally governs APA claims and starts accruing when a final agency action injures the plaintiff.  See 28 U.S.C. § 2401(a); Corner Post, Inc. v. Board of Governors of the Federal Reserve System, 603 U.S. 799, 825 (2024).  The Supreme Court explains that "an APA plaintiff does not have a complete and present cause of action until she suffers from an injury from final agency action, so the state of limitations does not begin to run until she is injured."  Corner Post, Inc. v. Board of Governors of the Federal Reserve System, 603 U.S. at 809.  A right of action "accrues when the plaintiff has a complete and present cause of action -- i.e., when she has the right to file suit and obtain relief."  Corner Post, Inc. v. Board of Governors of the Federal Reserve System, 603 U.S. at 809.

Santa Ana Pueblo argues that the relevant final agency action and the resulting injury is the Tompkins Opinion issued on June 7, 2013.  See Reply to Motion to Reconsider at 9-10.  In

- 37 -

Santa Ana Pueblo's view, the Tompkins Opinion conclusively resolves the longstanding boundary dispute in Santa Ana Pueblo's favor and thus is "deeply injurious" to San Felipe Pueblo. See Reply to Motion to Reconsider at 10. If the Tompkins Opinion constitutes the final agency action, San Felipe Pueblo's time to sue expires on June 7, 2019. Because San Felipe Pueblo does not file its Complaint until April 5, 2023, Santa Ana Pueblo argues that San Felipe Pueblo files its lawsuit four years too late to challenge any part of that opinion. The Court disagrees with Santa Ana Pueblo's conclusion.

In Bennett v. Spear, 520 U.S. 154 (1997), the United States argues that the petitioners cannot obtain judicial review under the APA on the theory that the Biological Opinion does not constitute a "final agency action." 520 U.S. at 177. The Supreme Court holds that there are two conditions for agency action to be final: "First, the action must mark the 'consummation' of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" Bennett v. Spear, 520 U.S. at 178. The first requirement is uncontested, but the Supreme Court stresses that the second requirement is met, because that opinion alters the legal regime to which the action agency is subject. See Bennett v. Spear, 520 U.S. at 178. The Court contrasts that case with Franklin v. Massachusetts, 505 U.S. 788 (1992), where "the agency action in question was the Secretary of Commerce's presentation to the President of a report tabulating the results of the decennial census; the Supreme Court's holding that this did not constitute "final agency action" was premised on the observation that the report carried "no direct consequences" and served "more like a tentative recommendation than a final binding determination." Bennett v. Spear, 520 U.S. at 178 (citing Franklin v. Massachusetts, 505 U.S. 788 (1992).

The Tompkins Opinion is more akin to the report in <u>Franklin</u> than the opinion in <u>Bennett</u>. Like the <u>Franklin</u> report, the Tompkins Opinion has no legal consequences and does not itself determine rights or obligations; therefore, it was not a final agency action. The Tompkins Opinion's conclusion confirms this observation:

> The time has come to bring resolution to this longstanding boundary dispute. Our research and analysis has led us to conclude that the boundaries of the lands patented to the respective Pueblos conflict, that a resurvey of the disputed boundary is necessary, and that the boundary between Santa Ana's El Ranchito Tract and the Pueblo of San Felipe lies north of the southern boundary line of the San Felipe patent. Therefore, the BLM, in coordination with the BIA, needs to address this overlap and undertake a resurvey of the disputed boundary based on this Opinion.

Tompkins Opinion at 16. Although the Tompkins Opinion expresses a view favoring Santa Ana Pueblo, it does not itself create legal consequences. Rather, it directs the BLM, in coordination with the BIA, to make the final legal determination through a resurvey. <u>See</u> Tompkins Opinion at 16. The BLM later completes that resurvey, giving the Tompkins Opinion its first legal effect. Only the BLM, as the agency authorized to conduct binding surveys and file official plats, can alter legal boundaries. <u>See</u> Plaintiff's Response to Motion to Reconsider at 9. Based on the BLM's findings, further actions follow, including the disbursement of the IIM trust account and the alteration of TAAMS records. The BIA Regional Director explains that those record changes result from "the Bureau of Land Management's . . . April 20, 2017, official filing of the plat of the corrective dependent survey that identifies the common boundary between the San Felipe Pueblo and the El Ranchito Tract." Plaintiff's Response to Motion to Reconsider at 9. The culmination of these agency actions is the Interior Board of Land Appeals' decision to uphold the Interior Solicitor's directive to conduct the boundary resurvey. The IBLA's April 5, 2017, decision therefore constitutes the final agency action that triggers the statute of limitations.

The procedural history confirms this timeline. San Felipe first challenges the Interior Solicitor's directive that the BLM conduct a boundary resurvey on April 9, 2014. See Complaint ¶ 179, at 49. The BLM New Mexico State Director denies that challenge on August 29, 2014, and San Felipe Pueblo appeals to the IBLA the same day. See Complaint ¶¶ 180-81, at 49. On April 5, 2017, the IBLA upholds the Solicitor's directive to conduct a boundary resurvey. See Complaint ¶ 182, at 49-50. That IBLA decision constitutes the final agency action that starts the six-year limitations period, which expires on April 5, 2023. San Felipe Pueblo files this case's Complaint on April 5, 2023. See Complaint at 1. Because San Felipe Pueblo files on the final permissible date, its claims challenging the initial boundary resurvey are timely under the APA's six-year statute of limitations. San Felipe Pueblo may therefore amend its pleading to add an APA claim -- but only one that challenges the Interior Solicitor's original directive ordering the BLM to conduct the boundary resurvey.

**IT IS ORDERED** that: (i) the Plaintiff's Motion for Leave to File First Amended Complaint, filed July 29, 2024 (Doc. 78), is granted in part and denied in part; (ii) the Plaintiff cannot include in the Amended Complaint claims challenging Intervenor-Defendant Pueblo of Santa Ana's title; and (iii) the Plaintiff can include in the Amended Complaint only a claim under the Administrative Procedures Act, 5 U.S.C. § 702, challenging the Solicitor of the Department of the Interior's directive to conduct a land boundary resurvey, provided that the challenge does not rest on the assertion that the Plaintiff owns the disputed land.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Tim Hennessy
Steven J. Bloxham
Peebles Kidder Bergin & Robinson
Sacramento, California

-- and --

Annette T. Brown
Timothy J. Humphrey, Sr.
Stetson Law Offices, P.C.
Albuquerque, New Mexico

-- and --

Rebecca L. Kidder
Michael Robinson
Peebles Kidder Bergin & Robinson
Rapid City, South Dakota

-- and --

Thomas Nitschke
Dragonfly Law Group, P.C.
Rapid City, South Dakota

-- and --

Judith Amy Shapiro
Judith A. Shapiro, Esq.
Washington, DC

       *Attorneys for the Plaintiff*

Devon Lehman McCune
United States Department of Justice
Environmental & Natural Resources Division
Washington, D.C.

       *Attorneys for the Defendants*

Richard W. Hughes
Allison K. Athens

Rothstein Donatelli LLP
Santa Fe, New Mexico

*Attorneys for the Intervenor-Defendant*